FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellant,

v.

ZOOK BROTHERS CONSTRUCTION COMPANY, a corporation; Glenn T. Zook; Donald R. Zook; Louise M. Zook; Eunice E. Zook, Defendants–Appellees.

No. 91–35468.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1992.

Decided Aug. 24, 1992.

---

**10.** Cause has been shown for Petti's counsel's delay in filing his opening brief and we decline to impose sanctions.

Lawrence H. Richmond, F.D.I.C., Washington, D.C., for plaintiff-appellant.

Michael S. Becker, Luxan and Murfitt, Helena, Mont., for defendants-appellees.

Before: ALARCON, RYMER and NELSON, Circuit Judges.

RYMER, Circuit Judge:

The FDIC brought suit against Louise Zook on a guaranty executed in support of a loan to Zook Brothers Construction Company by Continental Illinois National Bank and Trust Company of Chicago, which had assigned agreements relating to ZBCC to the FDIC. The district court decided after a bench trial that the Bank's failure to obtain Zook's consent to alterations in the credit arrangement released her from the guaranty, rendering it unenforceable under Illinois law. The FDIC argues that enforceability is a matter of federal law, and that the district court should have applied 12 U.S.C. § 1823 and the *D'Oench* doctrine in making its determination. We agree and, because Louise Zook never cancelled her guaranty, it should be enforced. Accordingly, we reverse.

I

This dispute arises out of Louise Zook's participation and involvement in the ongoing credit relationship between Continental Illinois and ZBCC. Donald and Glenn Zook are ZBCC's sole shareholders. Louise Zook is Donald's wife. In April 1977, ZBCC obtained a $2,000,000 loan from the Bank. In October of that year, Donald and Louise co-signed a $500,000 guaranty on the amounts owed by ZBCC.[1] Through 1978 and 1979, the ZBCC loan was steadily increased and new guaranties issued. Louise Zook never signed these guaranties.

In June 1980, however, after Continental increased ZBCC's loan to $3,500,000, Louise did co-sign another guaranty. The new guaranty read in part: "This guaranty shall in all respects be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect ... subject to discontinuances as to any of the under-

---

**1.** This guaranty was returned to them, stamped cancelled, in March 1979.

signed only upon actual receipt by the Bank of written notice...."

At some point after the 1980 guaranty was signed, ZBCC began to fall behind in its loan payments. As a result, on July 7, 1981, the credit agreement was amended and new notes taken. Also, during 1981 and 1982, the Bank and ZBCC agreed to three auctions of ZBCC collateral and agreed to put the proceeds toward the loans, now considered in default. The Bank never sent Louise notice of these sales or sought her consent.

In December 1982, a new loan consolidation agreement was made. In connection with this, Donald Zook reaffirmed that his 1979 and 1980 guaranties remained in full force and effect. Louise Zook did not sign, and was not asked to sign, such a document, but her 1980 guaranty remained in the Bank's active loan file.

In 1984, the Bank assigned the documents relating to the ZBCC debt to the FDIC, and in 1989, the FDIC won a judgment against ZBCC, Glenn Zook, and Donald Zook on the ZBCC loan, which had been declared in default.

The FDIC sought to hold Louise Zook personally liable for this judgment based on her 1980 guaranty. The district court referred Zook's motion for summary judgment to a magistrate judge, and adopted his recommendation that it be denied because of material issues of fact on defenses to enforcement. The court then proceeded to trial on the merits. It found that Zook had not received notice of the Loan Consolidation Agreement and had not consented to it, and that the Bank's records thereafter contain no references to the individual guaranty of Louise Zook. It concluded that the guaranty was to be construed in

accordance with Illinois law, and that because Zook had not consented to material alterations of the 1979 Credit Agreement, she was released from her obligations under the 1980 guaranty. The court therefore declined to enforce it.

We review the district court's conclusions of law de novo. *Sherman v. Mutual Benefit Life Ins. Co.*, 633 F.2d 782, 784–85 (9th Cir.1980).

## II

■■■ The FDIC argues that enforceability of Zook's guaranty should have been decided under federal law.[2] This is clearly correct. 12 U.S.C. § 1819 states that suits in which the FDIC is a party are deemed to arise under the laws of the United States, and we have so held. *FDIC v. First Nat'l Fin. Co.*, 587 F.2d 1009, 1012 (9th Cir.1978). Zook in effect concedes that federal law controls, but counters that it is nevertheless appropriate to look to state law to determine whether the 1980 guaranty remained valid in light of intervening transactions, because the guaranty provided that it was to be construed under Illinois law. There is no authority for this position, and we decline to accept it.

Section 1823(e) and *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), define the FDIC's power to enforce a guaranty such as Zook's. *D'Oench* precludes obligors from asserting side deals or secret agreements which may mislead bank examiners against the FDIC to diminish the value of written loan obligations. Section 1823(e) bars the use of extrinsic agreements to diminish or defeat the FDIC's interest in an asset, unless the documents meet specific requirements.[3]

**2.** Zook argues that the FDIC waived any claim that Zook's 1980 guaranty is governed exclusively by federal law, because the magistrate judge's recommendation made no reference to § 1823(e) and the FDIC's objections went only to the 1977 guaranty. The FDIC's objections did note that § 1823(e) raises presumptions opposite to those of the magistrate judge. In any event, a failure to object to a magistrate judge's conclusions of law does not automatically bar raising the objection on appeal, *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir.1991); *see also Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th

Cir.1991); *Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 636 (9th Cir.1988); *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.1983), particularly where, as here, both parties have had the opportunity fully to address the question. *See Martinez*, 951 F.2d at 1157.

**3.** 12 U.S.C. 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section

Together, their effect is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 399, 98 L.Ed.2d 340 (1987). As we explained in *FSLIC v. Gemini Management*, 921 F.2d 241 (9th Cir.1990):

In 1942, the Supreme Court articulated a rule designed to implement a "federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." This policy is as sound today as it was in 1942, if not more so.

*Id.* at 244 (quoting *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679).

Focusing solely on documents in the bank's files allows the FDIC to assess the value of assets held by banks it insures or acquires in its corporate capacity. For good reason this must be a uniform national rule, and we therefore hold that the enforceability of Zook's guaranty is governed by federal law.

### III

The FDIC contends that federal law compels enforcement because Zook's 1980 guaranty is "continuing, absolute and unconditional," and explicitly covers "any loan or other financial accommodation heretofore or hereafter at any time made or granted to [ZBCC]." It argues that none of the extrinsic materials considered by the district court shows a written discontinuance notice by Zook, or any written release by Continental. Therefore, the FDIC urges, § 1823(e) and *D'Oench* preclude Zook from asserting implied limitations.

Zook, on the other hand, argues that the *D'Oench* doctrine does not come into play where ordinary good faith transactions are involved and the liability of the parties to commercial paper will best be solved by applying local law. She relies on our early decision in *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974), which held that *D'Oench* is not implicated if the obligor is innocent of any wrongdoing or negligence in transactions with the bank. Zook further argues that § 1823(e) does not come into play because there was a material change in the underlying credit relationship, or a novation had occurred, before the FDIC took over.

■ We think it is beyond question that § 1823(e) and *D'Oench* allow the FDIC to rely on official bank records to the exclusion of extrinsic matters. Conversely, we have also held that a debtor may not rely on anything but "a clear and explicit written obligation." *Gemini Management*, 921 F.2d at 245. That being so, Zook's attempt to skirt her express, continuing guaranty must fail.

*D'Oench* applies in Zook's case just as it did in *Gemini Management*. In *Gemini Management*, the signed letter for a loan promised Gemini $1,100,000, but the first, unsigned version of the letter, also in the bank file, showed a promise to loan $1,545,-000. We noted that there was no "explicit statement" in the bank files obligating the bank to a $1,545,000 loan and that "[i]t was perfectly reasonable for the FSLIC to conclude that the terms of the First Letter were completely superseded by the Second Letter." *Gemini Management*, 921 F.2d at 245. In the same way, even if the Bank's records could be construed to indicate an intent to release Zook's guaranty, there is no document explicitly so stating. For this reason, the 1980 guaranty, which is facially valid, controls.

or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contempo-raneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.

Section 1823(e) requires this result as well. Its requirements are "categorical," *Langley*, 484 U.S. at 95, 108 S.Ct. at 399, and only the 1980 guaranty itself complies with the statute's criteria. Neither the 1979 Credit Agreement nor the 1982 Loan Consolidation Agreement meets the requirement that the agreement be executed by the depository institution and the obligor contemporaneously with acquisition of the asset. The 1979 Credit Agreement predates Zook's 1980 guaranty, while the 1982 Loan Consolidation Agreement followed it by more than two years. Nor was either document signed by Zook. They may not, therefore, consistent with § 1823(e), be used to defeat the FDIC's interest.

*Meo* does not require a different result. In *Meo*, we held that a bona fide bank borrower who was neither a party to any deceptive scheme involving a claimed defense, nor negligent with respect to the circumstances giving rise to it, is not estopped from asserting a defense against the FDIC. 505 F.2d at 793. The FDIC suggests that *Meo* is no longer good law in light of the Supreme Court's decision in *Langley*, 484 U.S. 86, directing analysis under § 1823(e) on the potential to deceive the FDIC instead of on the parties' intent. We need not go so far, however, because *Meo* is in any event distinguishable. Meo gave a promissory note to the bank to enable him to acquire shares of the bank's stock. The order was not properly executed, which Meo discovered after the bank had failed, and the FDIC sued on the note. Meo argued that he should not be estopped from avoiding his note for failure of consideration after the bank had collapsed. We agreed, holding that *D'Oench* is inapposite when the borrower is "a completely innocent party with respect to the bank's improper execution of the stock sale agreement." *Meo*, 505 F.2d at 792. Meo was innocent of any wrongdoing or negligence, but the same cannot be said here, where the guaranty on its face requires a written notice of discontinuance but none was ever furnished. *See Gemini Management*, 921 F.2d at 245 (borrower's failure to insure that terms were explicitly written on paper,

where opportunity to do so existed, was negligent). In these circumstances, it was reasonable for the FDIC to conclude that Zook's continuing guaranty continued. *See id.*

We conclude that federal law requires Zook's guaranty to be enforced.

## IV

 The FDIC argues for the same reasons that there are no exceptions to the *D'Oench* doctrine which permit Zook to rely on state law defenses. Zook, on the other hand, urges that she may assert material alteration, and novation, against the FDIC because, by operation of Illinois law, Zook was off the hook before her guaranty was acquired by the FDIC. On this view, the FDIC took "no asset" and neither § 1823(e) nor *D'Oench* applies. Because Zook's defenses depend on proving an implied agreement between herself and Continental that is belied by the presence of the 1980 guaranty in the Bank's file, we hold that there is no basis for invoking the "no asset" exception.

The seminal opinion on the "no asset" exception is the Eleventh Circuit's in *FDIC v. Merchants National Bank*, 725 F.2d 634, 639 (11th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). In *Merchants*, the borrower sought to limit the scope of the obligation described in the loan documents by asserting that an ambiguity existed, then resolving the ambiguity by resorting to documents which did not comply with § 1823(e). While holding that the documents proffered in support of the defense failed to meet the requirements of § 1823(e), the court noted a limited exception to § 1823(e) when an asset is invalid for fraud or breach of bilateral obligations contained in it. "In such cases the parties contend that no asset exists or an asset is invalid *and* that such invalidity is caused by acts independent of any understanding or side agreement." 725 F.2d at 639.

We have never directly addressed the "no asset" exception, though other circuits

have.[4] The FDIC does not suggest that the exception does not exist, at least so long as it is limited to instruments which are invalid for fraud or breach of obligations in the asset itself. We have no call in this case to define the exception more broadly than *Merchants,* for here, as in *Merchants,* the borrower's case cannot be made out apart from evidence, independent of the guaranty itself, that fails to comply with § 1823(e). "Congress did not intend that Sec. 1823(e) be avoided in this manner; [the borrower's] construction would drain substantial vitality from Sec. 1823(e), as applied to this case, by throwing into question the very records of the bank that the statute entitles FDIC to consider and rely upon." *Id.*

Both the First Circuit in *FDIC v. P.L.M. International, Inc.,* 834 F.2d 248 (1st Cir. 1987), and the Fifth Circuit in *Beighley v. FDIC,* 868 F.2d 776 (5th Cir.1989), were faced with situations similar to Zook's and declined to recognize an exception to *D'Oench.* In *P.L.M. International,* the borrower executed a continuing guaranty. He later secured a release terminating his obligations on the guaranty, but the guaranty remained in the bank file without any notation on termination. The FDIC subsequently took over the bank, and sued on the guaranty. The borrower offered the release agreement to show that the guaranty was terminated prior to the FDIC's acquisition of the bank. He argued that *Merchants* applied and that, because the agreement would show the termination occurred prior to FDIC involvement, § 1823(e) did not apply. The court rejected this argument, stating, "[t]he case at bar falls squarely within the ambit of section 1823(e). Defendants seek to avoid liability under the guaranty agreement by asserting the validity of a nonconforming release:

a side agreement...." 834 F.2d at 254.[5] Zook likewise seeks to avoid federal law by asserting the validity of an implied side agreement to extinguish her guaranty, although no document in the bank's file says that it is terminated.

In *Beighley,* the borrower contended that the bank agreed to finance a third party purchase of collateral property at the same time a renewal note was executed to consolidate and reduce Beighley's total indebtedness, and that its failure to fund the purchase precluded the FDIC from enforcing the note. Beighley introduced numerous documents to show there was such an agreement. Affirming summary judgment in favor of the FDIC, the court emphasized that not a single document stated in writing that the bank agreed to finance purchase of the property, and that inferences which could be drawn from the bank's cooperation in Beighley's efforts to sell the property do not meet the requirements of § 1823(e). *See* 868 F.2d at 783–84. Similarly in the case of Zook's guaranty, there is no writing which indicates that it was released or terminated, and inferences which she wishes to draw from other transactions do not comply with § 1823(e).

■ We conclude that federal law governs this action by the FDIC on a continuing guaranty in the loan files of a bank whose assets were assigned to it. Federal law requires enforcement of the guaranty because the FDIC under *D'Oench* and § 1823(e) is entitled to rely on documents in a loan file, and there is no basis for Zook's defenses based on state law as they depend on inferences contravening the guaranty which are raised, and may be proved, only by reference to documents which do not meet the requirements of § 1823(e).

---

**4.** *See, e.g., Commerce Fed. Sav. Bank v. FDIC,* 872 F.2d 1240 (6th Cir.1989); *Beighley v. FDIC,* 868 F.2d 776 (5th Cir.1989); *FDIC v. P.L.M. Int'l, Inc.,* 834 F.2d 248 (1st Cir.1987); *Howell v. Continental Credit Corp.,* 655 F.2d 743 (7th Cir. 1981); *cf. Langley,* 484 U.S. at 93–94, 108 S.Ct. at 399 (where instrument is rendered void, rather than merely voidable, before being acquired by the FDIC, the instrument is not an asset protected by § 1823(e)).

**5.** *See also Gunter v. Hutcheson,* 674 F.2d 862, 867 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), cited by the court in *P.L.M. International,* in which the Eleventh Circuit distinguished cases "where the parties disputed the validity of the entire transaction from its inception, from those cases where the parties contended that a side agreement controlled the rights of the parties." *P.L.M. Int'l,* 834 F.2d at 253.

REVERSED and REMANDED with instructions to enter judgment in favor of the FDIC.