**Leon NOTRICA, Plaintiff–Appellant–
Cross–Appellee,**

v.

**FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver of Vernon Sav-
ings and Loan Association, FSA, Defen-
dant–Appellee–Cross–Appellant.**

**Nos. 92–55236, 92–55939.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1993.

Decided Aug. 17, 1993.

---

Carolyn Chapman, San Diego, CA, for plaintiff-appellant-cross-appellee.

Dan Woods, Brobeck, Phleger & Harrison, Los Angeles, CA, for defendant-appellee-cross-appellant.

Before WOOD, Jr.*, REINHARDT, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Leon Notrica appeals the district court's grant of summary judgment in favor of the Federal Deposit Insurance Corporation ("FDIC"). Notrica contends that the district court incorrectly determined that there are no triable issues of material fact with respect to either Notrica's claim that his security interest in a parcel of real property is senior to a lien held by the FDIC, or his claim that the FDIC is liable to him for the balance due on a promissory note executed by Notrica and a third party. The FDIC appeals the district court's denial of its post-judgment motion for attorneys' fees. We have jurisdiction under 28 U.S.C. § 1291, and we affirm both the district court's grant of summary judgment and its order that each side bear its own attorneys' fees.

* Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

## I

In December 1983, Sandco American, Inc. ("Sandco") exercised an option to purchase from Campo de Leon ("CDL") a parcel of real property located in San Marcos, California ("Santalina Hills"). Under the terms of the option agreement, the purchase price was set at $2,000,000: $750,000 payable in cash, and $1,250,000 due on a promissory note secured by a first deed of trust on the Santalina Hills property. The option agreement and accompanying escrow instructions provided, in part, that "CDL shall subordinate its secured position [with respect] to the property to a construction loan upon the recordation of the final subdivision map and recordation of a construction loan to Sandco American, Inc. or to its assignee." Sandco and CDL opened escrow on January 30, 1984.

On March 8, 1984, Sandco executed and delivered to Vernon Savings & Loan Association ("Vernon") a promissory note payable to Vernon in the principal amount of $13,513,-000. The purpose of the loan was to finance Sandco's subdivision and development of a manufactured housing project at Santalina Hills, and the promissory note was secured by a deed of trust on the Santalina Hills property. As part of the loan agreement, Sandco and Vernon entered into a Profits Assignment, which provided that after Sandco had successfully discharged its obligations under the promissory note, Vernon was entitled to receive certain future profits deriving from the Santalina Hills real estate development project.

On March 9, 1984, Sandco and CDL restructured their original real estate purchase transaction by amending their option agreement and escrow instructions, and executing a subordination agreement. According to the new terms and conditions agreed upon by the parties, Sandco was required to make a $1,000,000 cash payment to CDL, and would execute and deliver to CDL a $1,000,000 promissory note. As security for the promissory note, CDL was given a "second and subsequent" deed of trust on Santalina Hills, and deeds of trust on two other Sandco properties. The subordination agreement expressly provided that CDL's deed of trust covering Santalina Hills would be subordinate to the superior lien held by Vernon on the same property.

After escrow closed for the sale of Santalina Hills from CDL to Sandco and the deeds of trust and subordination agreement were duly recorded, Sandco began to experience financial difficulty. Sandco defaulted on the $1,000,000 promissory note held by CDL and filed for bankruptcy protection under Chapter 11. Vernon then declared its $13,513,000 construction loan to Sandco to be in default.

On March 20, 1987, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver of Vernon. In August 1987, the FSLIC completed a non-judicial foreclosure of the Santalina Hills property under the terms of the first deed of trust formerly held by Vernon. Prior to the application of the net proceeds of the foreclosure sale, Sandco owed the FSLIC over $9.2 million.

On June 2, 1988, CDL filed suit in California state court against the FSLIC, Vernon, and several other parties. CDL's complaint alleged twelve causes of action, all arising from the various agreements with respect to the Santalina Hills property and Sandco's default on its several loan obligations. In December 1988, CDL dissolved and assigned all of its claims to its president, Leon Notrica ("Notrica"), in his individual capacity. The FSLIC removed Notrica's suit to United States District Court for the Southern District of California. The FDIC was substituted in place of the FSLIC, and all other defendants were dismissed from the case. The FDIC moved for summary judgment, arguing that *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and 12 U.S.C. § 1823(e) barred each of CDL's claims. The district court agreed, and on January 17, 1992, the court entered an order granting the FDIC's motion for summary judgment.

On February 21, 1992, the FDIC filed a *post-judgment motion* seeking $413,123.75 in attorneys' fees. The FDIC argued that it was the prevailing party on Notrica's contract-based claims and therefore, was enti-

tled to attorneys' fees under California Civil Code § 1717. Noting that "[w]hile the FDIC ultimately prevailed, it did not prevail on questions of contract enforcement but rather from Federal law policy as outlined in [*D'Oench, Duhme* ] and 12 U.S.C. § 1823(e)," the district court determined that neither side was entitled to an award of attorneys' fees and denied the FDIC's motion.

## II

We review de novo the district court's grant of summary judgment. *Hay v. First Interstate Bank, N.A.*, 978 F.2d 555, 557 (9th Cir.1992). "The proper inquiry is whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law." *Id.*

Whether a district court applied the correct legal standard regarding a party's entitlement to attorneys' fees is an issue of law reviewed de novo. *United States for Use and Benefit of Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir.1989), *cert. denied*, 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990).

## III

### A

Arguing that Vernon, a Texas corporation, was not legally authorized to do business in California, Notrica claims that each of Vernon's California transactions, including Vernon's $13,513,000 loan to Sandco and the deed of trust securing the loan, is void and therefore unenforceable. As a result, Notrica concludes that CDL's subordination agreement with Sandco, under which CDL's security interest (now held by successor-in-interest Notrica) in Sandco's Santalina Hills property was subordinated to the deed of trust held by Vernon (and now the FDIC), is also void. Further, Notrica maintains that

*D'Oench, Duhme* and section 1823(e) cannot apply to bar his illegality claim because CDL neither borrowed from Vernon, nor was CDL some other form of obligor of Vernon's who now is attempting to avoid its commitment on a particular debt or monetary obligation transferred from Vernon to the FDIC. As CDL was a party completely uninvolved in the transaction which Notrica now challenges as illegal, Notrica contends that he is in a position superior to that of a typical claimant against whom section 1823(e) and *D'Oench, Duhme* are invoked.

Even assuming that Vernon were not authorized to do business in California, or otherwise operated in violation of California law, there is no support for Notrica's sweeping contention that all of Vernon's California transactions and agreements are *void*. Notrica fails to demonstrate a coherent legal basis for his challenge to the Vernon–Sandco loan agreement, nor does Notrica explain how a valid (although potentially voidable) contract to which CDL neither consented nor was a party, affects the viability of Sandco's independent subordination agreement with CDL. Thus, the subordination agreement is an enforceable contract, and under its express terms, the FDIC's security interest in the Santalina Hills property was duly recorded first, and is senior to any rights in the property held by Notrica.

Moreover, Notrica's attempt to circumvent *D'Oench, Duhme* and section 1823(e) is similarly untenable; each serves to preclude Notrica's illegality claim. *D'Oench, Duhme* "precludes obligors from asserting side deals or secret agreements which may mislead bank examiners against the FDIC to diminish the value of written loan obligations." *FDIC v. Zook Bros. Constr. Co.*, 973 F.2d 1448, 1450 (9th Cir.1992). "Section 1823(e) bars the use of extrinsic agreements to diminish or defeat the FDIC's interest in an asset, unless the documents meet specific requirements."[1] *Id.* at 1450–51. Together,

---

1. 12 U.S.C. § 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in an asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured deposi-

tory institution, shall be valid against the [FDIC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contempora-

the effect of *D'Oench, Duhme* and section 1823(e) is "to allow federal and state bank examiners to rely [exclusively] on a bank's records in evaluating the worth of a bank's assets." *Id.* at 1451 (quoting *Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987)).

■ In the more typical *D'Oench, Duhme* case, a borrower (*e.g.,* Sandco), seeking to free itself of its contractual obligation to pay the amount remaining on its promissory note, would be the party claiming that a Savings & Loan in FDIC receivership (*e.g.,* Vernon) did business illegally. Under these hypothetical facts, if the borrower's attempt to avoid liability were predicated on its argument that the Savings and Loan's illegal behavior rendered the loan agreement voidable by the borrower, the borrower's claim clearly would be barred under *D'Oench, Duhme* and section 1823(e). *See Newton v. Uniwest Financial Corp.*, 967 F.2d 340, 347 (9th Cir.1992) ("as to an agreement that would be merely voidable, the *D'Oench* doctrine remains applicable"); *see also Langley*, 484 U.S. at 94, 108 S.Ct. at 402 (FDIC remains entitled to protection of 12 U.S.C. § 1823(e) when agreement is voidable, not void). In the present situation, Notrica is trying to wipe out the security interest held by the FDIC in Santalina Hills, which Vernon obtained from Sandco in exchange for the $13,515,000 loan. Thus, in substance, Notrica is in no better position than the hypothetical borrower would have been, and Notrica fails to offer any cogent reason why his illegality claim is not precluded, just as the claim would have been had it been brought directly by Sandco.

**B**

Notrica contends that the district court's grant of summary judgment was improper because there is a triable issue of fact as to whether Vernon was engaged in a joint venture with Sandco, and thus is liable for Sandco's remaining debts and obligations.

■ Notrica's argument is without merit.[2] In the present case, bank records do not reveal that Vernon's loan agreement with Sandco constituted a de facto partnership or joint venture, nor do the records indicate that Sandco's creditors could potentially reach Vernon's assets. To the contrary, Section 4.03 of the Profits Assignment explicitly states that Vernon's acceptance of profits from the Santalina Hills project did not make Vernon the partner of Sandco:

> *No Member or Partner.* By its acceptance of this Profits Assignment, [Vernon] does not become a member or partner of [Sandco]. Consequently, in no event shall [Vernon] be liable for any of the debts, obligations, or liabilities of [Sandco] or of its partners as a result of the execution of this Profits Assignment and in no event shall [Vernon] be liable for any contributions to [Sandco]. [Vernon's] only interest in [Sandco] shall be [Vernon's] right to receive the interests granted to [Vernon] and assigned under this Profits Assignment.

While Notrica asserts that Sandco and Vernon agreed to split the profits in half, and Notrica claims that other provisions contained in the loan documents establish Vernon's control over various aspects of Sandco's Santalina Hills development project, Notrica fails to identify any written provision indicating that Vernon intended to place assets at risk greater than the amount of the loan. As there appears to be no evidence in Vernon's records which undermines the clear disclaimer in section 4.03 of the Profits Assignment, the district court properly determined that *D'Oench, Duhme* and section 1823(e) bar Notrica's claim that the FDIC, as Vernon's as-

neously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.

**2.** Because the combination of *D'Oench, Duhme* and section 1823(e) provides a sufficient basis to affirm the district court's grant of summary judgment, it is unnecessary to reach the parties' arguments relating to the FDIC's status as a federal holder in due course.

signee, is a de facto partner of Sandco and therefore, must cover the balances remaining on loans outstanding after Sandco's default.

■ Notrica next argues that even if *D'Oench, Duhme* and section 1823(e) do apply, he is saved by the *Meo* "innocent" obligor exception. *See FDIC v. Meo,* 505 F.2d 790, 792–93 (9th Cir.1974). The exception is a narrow one—this circuit has recently held that "[t]he *Meo* exception must be read in light of the general policy of the *D'Oench* doctrine, which favors the interests of depositors and creditors of a failed bank, who cannot protect themselves" over the interests of other parties, who can. *In re Century Centre Partners Ltd.,* 969 F.2d 835, 839 (9th Cir.1992) (citation omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 2997, 125 L.Ed.2d 690 LEXIS 4273 (1993). "*Meo* is properly invoked only by [parties] who are 'innocent of any wrongdoing or negligence.' " *Id.*

Notrica does not qualify for the *Meo* exception. By failing to ensure that CDL's loan agreement with Sandco explicitly provided for recourse to the assets of Vernon in the event of Sandco's default, Notrica was "responsible for the creation of the false status of the note in the hands of the bank," and thus "lent himself to a scheme or arrangement" likely to deceive government regulators. *D'Oench, Duhme,* 315 U.S. at 460–61, 62 S.Ct. at 680; *see also FSLIC v. Gemini Management,* 921 F.2d 241, 245 (9th Cir.1990) (defendant's failure to insist that loan documents reflect the parties' agreement constitutes negligence).[3]

### IV

■ Next, Notrica contends that by invoking the *D'Oench, Duhme* doctrine in this case, the FDIC has taken his property without just compensation in violation of the Fifth Amendment. Specifically, Notrica

claims that the FDIC has not only taken his real estate, but has refused to honor Vernon's obligation to see that the note was paid by Sandco and to fund and supervise properly Sandco's activities.

Notrica fails to offer any support for his Fifth Amendment "takings" claim. We adopt the reasoning of the Fifth Circuit's decision in *Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244 (5th Cir.1990), and reject Notrica's argument. *See id.* at 1248 ("The *D'Oench, Duhme* doctrine does not deprive the appellants of property without just compensation. The appellants have simply deprived themselves of certain defenses to liability by failing to protect themselves in the manner required by the *D'Oench, Duhme* doctrine.").

### V

The FDIC argues that the district court erred in denying its post-judgment motion for attorneys' fees. The FDIC contends that where underlying contracts define the rights of parties to a state law action, state substantive law, including California Civil Code § 1717, governs the determination of whether a prevailing party may recover attorneys' fees. Noting that California Civil Code § 1717 provides that the prevailing party in any action on a contract containing an attorneys' fees clause is entitled to an award of attorneys' fees whether he is the party specified in the contract or not, the FDIC maintains that it is eligible to recover attorneys' fees based on provisions in various agreements between CDL and Sandco.

■ The FDIC's argument is without merit. This case is not a "state law action"—"federal law controls in cases involving the rights of the FDIC." *Meo,* 505 F.2d at 793 n. 4; *see also Zook,* 973 F.2d at 1450 ("suits in

---

3. In his reply brief, Notrica argues for the first time that a material issue of fact exists as to whether or not the FDIC would suffer monetary loss by honoring its obligation to Notrica—*i.e.,* whether the remaining assets of Vernon would be diminished as a result of the FDIC's giving priority to Notrica's deed of trust. However, in

applying *D'Oench, Duhme* and § 1823(e), we are not authorized to second-guess whether the FDIC is acting in its own best economic interest. According priority to Notrica's security interest clearly would "tend[ ] to diminish or defeat the right, title or interest of the Corporation." 12 U.S.C. § 1823(e).

which the FDIC is a party are deemed to arise under the laws of the United States"); 12 U.S.C. § 1819. Therefore, as the FDIC concedes that none of the identified agreements containing attorneys' fees clauses was signed by both Vernon and Notrica (or CDL) and admits that the parties were never in privity of contract,[4] sections of the California Civil Code concerning the allocation of attorneys' fees do not apply here.[5] The FDIC points to no provision of federal law which entitles it to attorneys' fees, nor does it contend that California Civil Code § 1717 should be adopted or otherwise incorporated into federal common law as the rule of decision. *See FDIC v. O'Melveny & Meyers*, 969 F.2d 744, 751 (9th Cir.1992) ("It is by now clear beyond doubt that federal, not state, law governs the application of defenses against FDIC. While we may incorporate state law to provide the federal rule of decision, we are not bound to do so."). Accordingly, the FDIC has offered no basis for reversal of the district court's order that each side bear its own attorneys' fees.

For similar reasons, we reject the FDIC's request for attorneys' fees on appeal under Cal.Civil Code § 1717.

AFFIRMED.

---

4. *United States for Use and Benefit of Reed v. Callahan*, 884 F.2d 1180 (9th Cir.1989), *cert. denied*, 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990), the decision upon which the FDIC places most weight with respect to the attorneys' fees issue, involved the application of "a specific fees clause in the ... subcontract" to which the plaintiff and defendant both were parties. *Id.* at 1185.

5. The FDIC cites *Walsh v. New West Fed. Sav. & Loan Ass'n.*, 234 Cal.App.3d 1539, 1 Cal.Rptr.2d 35 (1991), *review denied* (1992) in support of its argument that the district court's refusal to apply § 1717 was error. It appears, however, that *Walsh* never considered the possibility that federal law may govern the allocation of attorneys' fees; thus, we decline to follow the California Court of Appeal's decision.