**COTE d'AZUR HOMEOWNERS ASSOCIATION, Plaintiff,**

v.

**VENTURE CORPORATION, et al., Defendants.**

**No. C–92–1758 EFL.**

United States District Court, N.D. California.

March 14, 1994.

Sean Conley, Alexander Anolik, Michael Hardy, San Francisco, CA, for Cote D'Azur Homeowners Ass'n.

Paul Lahaderne, Kris A. Cox, Sedgwick Detert Moran & Arnold, San Francisco, CA, Ronald S. Berman, Berman Gaglione Dolan & Tetreault, Los Angeles, CA, Sadhana D. Narayan, Narayan Law Firm, San Francisco, CA, for Venture Corp. f/k/a Eves Development Corp., Robert J. Eves, Maryl G. Cohan, Dennis E. Carrade, Pamila Du Pertuis.

Kymberly Speer, Bronson Bronson & McKinnon, San Francisco, CA, Ronald S. Berman, Berman Gaglione Dolan & Tetreault, Los Angeles, CA, Kathryn N. Richter, Bronson Bronson & McKinnon, Walnut Creek, CA, Sadhana D. Narayan, Narayan Law Firm, San Francisco, CA, for Daon Corp.

Ronald S. Berman, Berman Gaglione Dolan & Tetreault, Los Angeles, CA, David M. Parker, Parker & Crosland, Larkspur, CA, Sadhana D. Narayan, Narayan Law Firm, San Francisco, CA, for Pacific Union Co.

Parker A. Maddux, Richard A. Hoyer, Pillsbury Madison & Sutro, San Francisco, CA, for General Elec. Co., Inc.

Gordon D. McAuley, Reisinger & Rogers, San Rafael, CA, for Concrete Waterproofing of California, Inc.

Ronald S. Berman, Pamela S. Cooke, Berman Gaglione Dolan & Tetreault, Los Angeles, CA, Sadhana D. Narayan, Susan Rose, Narayan Law Firm, San Francisco, CA, for Resolution Trust Corp.

David M. Sternberg, Grant & Sternberg, Walnut Creek, CA, Joseph P. Ryan, Martin Ryan & Andrada, Oakland, CA, for Dennis Baker.

Dennis Baker, pro se.

Kathryn N. Richter, Richter Senn & Palumbo, San Francisco, CA, for B.C.E. Development Corp.

Paul Lahaderne, Kris A. Cox, Sedgwick Detert Moran & Arnold, San Francisco, CA, for Gibraltar Management of Properties, Inc., The Preferred Group, Roger Marineri, H.J. Degenkolb.

Michael P. Ong, Ronald S. Berman, Pamela S. Cooke, Berman Gaglione Dolan & Tetreault, Los Angeles, CA, Sadhana D. Narayan, Narayan Law Firm, San Francisco, CA, for Gibraltar Sav.

S. Mitchell Kaplan, Gordon & Rees, San Francisco, CA, for Gene Fox.

Judith Alex, Robert Keeney, Imai Tadlock & Keeney, San Francisco, CA, for Rose Exterminator Co.

J. Martin Sproul, Yvonne V. Jorgensen, Michel & Manning, Walnut Creek, CA, Patrick Byrne, Gorman & Byrne, San Rafael, CA, for Booth & Little, Inc.

James D. Biernat, James D. Biernat Law Offices, Foster City, CA, for Ferrer Plumbing, Inc.

Randy Wright, Jeffery Borsuk, Pandell Norvich & Borsuk, Walnut Creek, CA, for A & P Plumbing.

Patricia A. Turnage, Maloney and Associates, Walnut Creek, CA, for Tile By Frank.

Jeremiah H. Leahy, Robert L. Grant, Steven J. Mehlman, Grant & Sternberg, Walnut Creek, CA, for Dennis Baker d/b/a MB Const.

Matthew E. McCabe, Daniel E. Angius, Angius & Terry, Walnut Creek, CA, for Association Management Services, Inc.

## MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT

LYNCH, District Judge.

### I. Introduction

The motion before the Court is a motion for summary judgment brought by defendant Resolution Trust Corporation ("RTC") against plaintiff, Cote d'Azur Homeowner's Association, and defendant/crossclaimant, Venture Corporation. The RTC contends that the D'Oench, Duhme doctrine and its statutory counterpart 12 U.S.C. § 1823(e) bar the assertion of two alleged side agreements, a joint venture agreement and a settlement agreement, which are essential to both parties' claims against the RTC.

For the reasons set forth in this Order, the Court holds that D'Oench, Duhme and 12 U.S.C. § 1823(e) do not bar the assertion of the two agreements at issue. Therefore the Court DENIES the RTC's motion for summary judgment.

### II. Background

This action was brought by Cote d'Azur Homeowners Association ("Association") for negligence, strict liability, breach of warranties, fraudulent concealment, and breach of fiduciary duty in connection with alleged construction defects in the Cote d'Azur condominium development located in Sausalito, California. See, Fifth Amended Complaint.[1] Plaintiff has named, among others, the following defendants: (1) the joint venture which undertook the development and sale of the condominiums, Cote d'Azur Associates, and (2) the individual partners in the joint venture—Venture Corporation, Cote d'Azur Developers, Inc., Gibraltar Savings, and Gibraltar Management of Properties, Inc.[2] Due to the insolvency of Gibraltar Savings and the dissolution of Gibraltar Management of Properties, the RTC has been substituted as defendant for both parties in its capacity as receiver.

In addition to plaintiff's claims, this dispute contains an abundance of crossclaims and counterclaims, one of which is relevant to the pending motion for summary judgment: Venture Corporation has crossclaimed against Gibraltar Savings, Gibraltar Management of Properties and the RTC for equitable indemnity, comparative indemnity, contribution, and express contractual indemnity (solely against Gibraltar). See, Venture Corporation's Second Amended Cross Claim. Venture Corporation's claims allegedly arise from Gibraltar's status as a partner in the joint venture, as well as an express indemnification clause in a settlement agreement between Venture Corporation and Gibraltar.

The facts relied on by the Court in deciding this motion are not in dispute.[3] In the late 1970s, Gibraltar Savings provided Daon Corporation with the initial construction fi-

---

1. Plaintiff asserts in its fifth amended complaint that the liability of the defendants arises from each defendant's alleged participation in the design, development, construction, repair, rehabilitation, finance, conversion, supervision, inspection and sale of the condominiums. Plaintiff alleges that the condominiums contain defects such as improper draining of parking decks, common areas which are deteriorating and leaking, clothes dryers which lack adequate venting, roofs, corridors and walkways which do not drain properly and which allow water infiltration, concrete beams with spalled concrete and exposed and rusting reinforcement, and exterior walls, windows, and doors which are not watertight. Fifth Amended Complaint, ¶ 15.

2. The remaining defendants are not directly affected by this motion.

3. The Court does not reach certain issues of fact that would have required resolution had the Court held that § 1823(e) applied in the instant case. Specifically, the Court makes no finding concerning whether the joint venture agreement and the settlement agreement were in fact ratified by the board of directors and were continuously official records of the bank as plaintiff and crossclaimant assert.

nancing for the conversion of the Cote d'Azur condominiums. Daon Corporation later abandoned the project. In 1982, Robert Eves and Eves Development Company (now known as Venture Corporation) decided to take over the development of the project with financing from Gibraltar Savings. On November 17, 1982, Venture Corporation and Gibraltar Savings entered into a joint venture agreement to convert the existing units into condominiums.

Under the agreement, Venture Corporation was the managing partner and Gibraltar Savings was to provide the construction financing and receive a share of the profits; in addition, Gibraltar was to be involved in the major decisions concerning the project. Shortly after entering into the joint venture, Gibraltar assigned its interest to Gibraltar Management of Properties, Inc., a wholly owned subsidiary of Gibraltar Savings. Venture Corporation (Eves Development Company) assigned its interest to its subsidiary, Cote d'Azur Developers, Inc. The joint venture was known as Cote d'Azur Associates ("CDA"). The units were developed and sold to the public.[4]

The events which occurred as Gibraltar Savings began to experience financial problems are difficult to follow. On March 30, 1989, the FSLIC became the conservator of Gibraltar Savings. On April 28, 1989, Gibraltar Savings and Gibraltar Management of Properties, Inc. filed suit against its joint venture partner, Venture Corporation, alleging breach of the joint venture agreement and requesting an accounting of the partnership funds. That litigation was settled pursuant to a settlement agreement dated September 27, 1989.[5] The settlement agreement assigned the assets and liabilities of Cote d'Azur Associates to the parties.

The RTC was appointed conservator of the "old" Gibraltar Savings on October 30, 1989. Later that day, the Office of Thrift Supervision transferred certain assets to the "new"

Gibraltar Savings. On October 31, 1989, Gibraltar Management of Properties was dissolved and all of its assets and liabilities were transferred to and assumed by the "old" Gibraltar Savings. Also on October 31, 1989, the RTC was appointed the conservator of the "new" Gibraltar Savings.

Then, on March 30, 1990, plaintiff filed this action for construction deficiencies in Marin County Superior Court. On June 29, 1990, Gibraltar Savings was declared insolvent and the RTC was appointed its receiver. On May 14, 1992, the RTC appeared in this action and on May 15, 1992, removed the action to this Court.

### III. *Summary*

The RTC seeks summary judgment against both plaintiff and crossclaimant Venture Corporation based on the *D'Oench, Duhme* doctrine and its statutory counterpart 12 U.S.C. § 1823(e). In essence, the RTC contends that, whether separately or together, the *D'Oench* doctrine and § 1823(e) allow the RTC to rely exclusively on the records of the bank. Thus, any cause of action which relies on an agreement, such as the joint venture or settlement agreement, not meeting the recordation requirements of § 1823(e) cannot be asserted by plaintiff or crossclaimant against the RTC.[6]

The Court disagrees. The Court holds that the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) do not bar plaintiff's claims against the RTC, nor Venture Corporation's crossclaims for defense and indemnification. First, § 1823(e) does not bar either set of claims as there is no particular asset acquired by the RTC which the parties seek to diminish by asserting the respective agreements. The Court rejects the position advocated by the RTC that § 1823(e) applies whenever an asserted claim would diminish the general assets of the receivership.

---

4. Initially, Gibraltar Savings and Venture Corporation each retained title to one unit.

5. At that time the Board of Directors of Gibraltar Savings was no longer in existence due to the FSLIC conservatorship.

6. The Court notes that the RTC does not address its potential liability as the direct seller of the three condominiums to which it apparently obtained title pursuant to the joint venture agreement and the settlement agreement.

■ Second, the common law *D'Oench, Duhme* doctrine does not operate to bar the assertion of plaintiff's or Venture Corporation's claims because, first, both agreements are clear and explicit written agreements carried on the books of Gibraltar. Moreover, neither the Homeowner's Association nor Venture Corporation is an obligor seeking to assert a claim or defend against the effort of the RTC to collect on an obligation. The parties were not in a lending relationship with Gibraltar Savings. They are creditors of the receivership, not obligors. Though this distinction may be irrelevant for the application of the statute, *D'Oench* is a rule of equitable estoppel which has consistently been applied to those in a lending relationship with a bank. Disregarding this limitation on the application of the *D'Oench* doctrine would be an unwarranted extension of *D'Oench*'s application.

■ Lastly, *D'Oench, Duhme* and § 1823(e) do not together form a greater bar to the assertion of "side agreements" than each alone. Despite the breadth and admitted harshness of the bar created by *D'Oench* and its statutory counterpart, the bar is limited by both the terms of the statute and the scope of the common law doctrine. Section 1823(e) does not apply where there is no particular asset to be diminished; *D'Oench, Duhme* does not apply where the party asserting the claim is a creditor in a non-lending transaction.[7] This case presents the rare situation in which neither the Homeowner's Association nor Venture Corporation is an obligor of the bank, and the agreements they seek to assert do not affect the RTC's interest in a particular asset. The Court therefore declines to extend *D'Oench* and § 1823(e) to bar the assertion of the joint venture and settlement agreements at issue in this case.

## IV. *Discussion*

### A. *Overview of D'Oench and 12 U.S.C. § 1823(e)*

At the outset, the Court notes that this case presents unusual facts in the context of the application of the *D'Oench, Duhme* doctrine and its statutory counterpart. Though the parties have argued the motion extensively, both orally and in their briefs, neither party has been able to point the Court to factually analogous cases in which *D'Oench, Duhme* and § 1823(e) were either held to bar claims such as plaintiff's or crossclaimant's, or held not to bar such claims. In addition, though the Court's own research has unearthed a large body of case law which discusses *D'Oench* and § 1823(e), very few cases provide guidance for their application to the two agreements at issue in this case: a joint venture agreement and a settlement agreement. Moreover, these classic *D'Oench* cases do not directly indicate whether the common law bar should apply against parties who are in no sense obligors of the bank and are not involved in a lending transaction. Given courts' expansive interpretation of *D'Oench* and § 1823(e), it is difficult to discern the true limits of the protection afforded the federal banking authorities. Therefore, prior to addressing the specific arguments relied on by the parties, the Court provides an overview of the *D'Oench* doctrine and § 1823(e).

### 1. *The D'Oench, Duhme Doctrine*

■ The *D'Oench, Duhme* doctrine is a federal common law rule of equitable estoppel which precludes obligors from asserting against the FDIC/RTC, as the basis for a defense or an affirmative claim, a secret, side agreement which is not reflected in the records of the bank and therefore may mislead bank examiners concerning the value of written loan obligations. *Federal Deposit Ins. Corp. v. Zook Bros. Constr. Co.*, 973 F.2d 1448, 1450 (9th Cir.1992). The doctrine originated in the namesake case of *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) in which the Supreme Court held that a borrower was precluded from defending against the FDIC on the basis that a secret,

---

**7.** Because the common law estoppel and § 1823(e) often bar the same claims and serve the same purpose, the two are typically discussed simultaneously. In this manner, the statute and the common law rule operate in conjunction to protect the RTC from undisclosed agreements. However, this does not permit the RTC to rely on a combination of disparate elements of § 1823(e) and *D'Oench* to bar claims that are not barred by either alone.

unrecorded side agreement allegedly altered the terms of·an obligation carried on the books of the bank. 315 U.S. at 460, 62 S.Ct. at 680.

The Supreme Court based the rule of equitable estoppel upon the "federal policy to protect respondent [FDIC], and the public funds which it administers against misrepresentation as to the securities or other assets in the portfolios of banks which respondent insures or to which it makes loans." *D'Oench, Duhme,* 315 U.S. at 457, 62 S.Ct. at 679; *see also, Federal Sav. & Loan Ins. Corp. v. Gemini Management,* 921 F.2d 241, 244 (9th Cir.1990). The Court went on to note:

> Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners ... The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied was likely to be misled.

*D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 680.

■ Thus, to invoke the *D'Oench* rule of equitable estoppel it is sufficient to show that the agreement relied upon was not within the bank's records, and that the party seeking to invoke the agreement lent himself to a scheme or arrangement likely to mislead the banking examiners. *See, Federal Deposit Ins. Corp. v. Murphy,* 12 F.3d 1485, 1490 (9th Cir.1993) (*D'Oench* requires a clear and explicit written obligation and that a party lend himself to a scheme by which banking authorities are likely to be misled); *Gemini,* 921 F.2d at 244 (banking authorities misled since agreement to fund project not in the files of bank; defendant lent himself to the agreement through failure to insist that

agreement to fund be stated explicitly in loan documents).

■ The purpose of the *D'Oench* doctrine's bar ·to the assertion of secret, side agreements, whether as the basis for a defense or a counterclaim, is threefold. First, *D'Oench* serves " 'to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.' " *Gemini,* 921 F.2d at 245 (quoting *Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987)); *see also, Zook Bros.,* 973 F.2d at 1451. Second, *D'Oench* favors the " 'interests of depositors and creditors of a failed bank, who cannot protect themselves ... over the interests of borrowers who can.' " *In re Century Centre Partners,* 969 F.2d 835, 839 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2997, 125 L.Ed.2d 690 (citing *FDIC v. McCullough,* 911 F.2d 593, 600 (11th Cir.1990)). Since the party to an agreement can presumably ensure that the bank properly record all of the terms of the agreement, *D'Oench* ultimately penalizes the borrowers who are at fault rather than innocent creditors and depositors. *See, e.g., Gemini,* 921 F.2d at 245 (borrower's failure to insure that terms of loan were explicitly written on paper was negligent).[8] Third, *D'Oench* provides an incentive to bank officials to give mature consideration to unusual lending agreements in order to prevent fraudulent transactions. *Murphy v. FDIC,* 12 F.3d at 1490 (*citing Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987)).

Since the creation of the *D'Oench* rule of equitable estoppel, courts have continuously expanded the doctrine to protect the federal banking authorities, justifying the expansion as furthering the goals of the doctrine. First, courts consistently apply *D'Oench* to bar agreements asserted against the FSLIC as well as the FDIC, *see, e.g., Gemini,* 921 F.2d 241, and more recently the RTC. *See, Resolution Trust Corp. v. Murray,* 935 F.2d

---

8. *See also, Zook Bros.,* 973 F.2d at 1452 (guarantor not completely innocent where failed to furnish written notice of discontinuance of guaranty); *In re Century Centre,* 969 F.2d at 839 (party lent himself to secret agreement by failure to investigate transaction before signing); *Notrica v. Federal Deposit Ins. Corp.,* 2 F.3d 961, 966 (9th Cir.1993) (failure to ensure that loan agreement explicitly provided for recourse to assets of bank was negligent).

89 (5th Cir.1991).[9] Courts have found no reason to distinguish among these institutions when carrying out their statutory duties. Furthermore, the doctrine has been extended to bar claims against the FDIC in its capacity as receiver in addition to its corporate capacity, again because the policies behind the doctrine are equally impacted by the banking authorities acting in either capacity. *See, e.g., Federal Deposit Ins. Corp. v. First National Finance*, 587 F.2d 1009, 1012 (9th Cir.1978).

The more controversial extensions of the *D'Oench* doctrine have been on different fronts, however. First, many courts have held *D'Oench* to bar both counterclaims asserted against the FSLIC/FDIC as well as affirmative defenses to collection on a note held by the FSLIC/FDIC. *See, Murphy v. FDIC*, 12 F.3d at 1490 (citing *Gemini*, 921 F.2d 241 (9th Cir.1990)). Courts reason that, logically, parties should not be permitted to assert a cause of action that would be barred if framed as an affirmative defense. *See, e.g., Kilpatrick v. Riddle*, 907 F.2d 1523 (5th Cir.1990). Second, the doctrine has been held to bar affirmative claims sounding in tort as well as contract because tort claims, such as fraud, often relate to a secret, side agreement that would otherwise be barred as an unrecorded condition to some written obligation. *See, e.g., Beighley v. Federal Deposit Ins. Corp.*, 868 F.2d 776, 783–84 (5th Cir. 1989) (*D'Oench* barred affirmative claims such as fraud arising out of alleged oral promise to finance future loans); *see also, Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1107 (11th Cir.1990) (tort claim not barred by *D'Oench* where plaintiff not an obligor asserting a claim related to a specific obligation) ("Vernon I").

 Finally, courts have carved out exceptions to the *D'Oench* estoppel that also are consistent with the purposes of the doctrine. *See, Vernon I*, 907 F.2d at 1106, n. 4 (only three situations where *D'Oench* fails to bar a defense). First, *D'Oench* has been held inapplicable where the borrower is completely innocent of any intentional or negligent wrongdoing. *Federal Deposit Ins. Corp. v. Meo*, 505 F.2d 790 (9th Cir.1974) (purchaser of stock, unaware that stock order was improperly executed, not estopped by *D'Oench* ).[10] Second, *D'Oench* does not bar the "assertion of defenses based on a bilateral obligation which appears in the bank's records." *Gemini*, 921 F.2d at 245 (quoting *FDIC v. Two Rivers Assoc.*, 880 F.2d 1267, 1275 (11th Cir.1989)); *see also, Howell v. Continental Credit Corp.*, 655 F.2d 743, 746–47 (7th Cir.1981) (*D'Oench* not applicable if side agreement facially manifests bilateral obligations). Third, courts have developed a "no asset" exception to *D'Oench*, which applies where the borrower asserts that no asset exists or that the asset is invalid due to acts independent of any side agreement. *See, Zook Bros.*, 973 F.2d at 1452–53 (discussing "no asset" exception to § 1823(e) and *D'Oench* ).

### 2. *12 U.S.C. Section 1823(e)*

Congress partially codified the *D'Oench* doctrine in the Federal Deposit Insurance Act of 1950, section 2[13](e), 12 U.S.C. section 1823(e). As amended, § 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,

---

9. *See, generally,* Marsha Hymanson, *Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail*, 62 S.Cal. L.Rev. 253 Rev. 253, text accompanying n. 47, for discussion of the expansion of *D'Oench* and section 1823(e).

10. Though the parties dispute the viability of *Meo*, the Court notes that recent Ninth Circuit cases indicate that the *Meo* innocent obligor exception is alive and well within the Circuit. *See, e.g., Falk v. Mt. Whitney Sav. & Loan Ass'n*, 983 F.2d 156, 160 (9th Cir.1993) (plaintiff could rely on *Meo* where alleging bank had no interest in parcel of land that was mistakenly transferred due to title company's error); *Zook Bros.*, 973 F.2d at 1452 (*Meo* not applicable where borrower cannot be said to be free of any wrongdoing or negligence).

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and,

(4) has been, continuously, from the time of its execution, an official record of the depository institution.[11]

■ Thus, § 1823(e) " 'bars the use of extrinsic agreements to diminish or defeat the FDIC's interest in an asset, unless the documents meet specific requirements.' " *Notrica v. Federal Deposit Ins. Corp.*, 2 F.3d 961, 964 (9th Cir.1993) (quoting *FDIC v. Zook Bros.*, 973 F.2d at 1450–51)). The purpose of the statute, like *D'Oench* is to allow federal and state bank examiners to rely on a bank's records when evaluating the worth of its assets either to determine fiscal soundness or, in the event of a bank failure, to decide whether to liquidate or provide financing for a purchase and assumption by another bank. *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).[12]

■ Moreover, the requirements of § 1823(e) apply regardless of the borrower's conduct or participation in a scheme to deceive the banking authorities; "[s]ection 1823 is a statutory mandate that stands independent of the *D'Oench Duhme* equitable underpinnings." *Murphy v. FDIC*, 12 F.3d at 1490 (citing Hymanson, *Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail*, 62 S.Cal. L.Rev. at 271–72). Thus, though § 1823(e) and *D'Oench* are often asserted simultaneously and serve to effectuate the same policy concerns, they are not identical. *Murphy*, 12 F.3d at 1490.

### B. *Plaintiff's Claims: Summary of Argument*

With this overview in mind, the Court turns to the arguments set forth by the parties concerning the application of *D'Oench, Duhme* and § 1823(e) to plaintiff's claims. The RTC contends that plaintiff's causes of action are barred by both § 1823(e) and the *D'Oench, Duhme* doctrine. The RTC asserts that Gibraltar's liability for plaintiff's claims is dependent upon Gibraltar's status as a partner in the joint venture. Because the joint venture agreement was allegedly not recorded pursuant to the terms of § 1823(e), the RTC contends that the agreement cannot provide the basis of plaintiff's claims against the RTC. Thus, Gibraltar's involvement in the condominium development is reduced to that of a lender, thereby relieving Gibraltar of joint tortfeasor liability.

Moreover, if § 1823(e) does not explicitly apply to the joint venture agreement, the RTC argues that the common law *D'Oench, Duhme* doctrine still bars the assertion of the agreement.[13] The RTC appears to rely on the common law doctrine and the statute at times separately and at times as though they have melded into one doctrine. According to the RTC, the essence of *D'Oench* and its statutory counterpart is that the banking authorities can rely exclusively on the official thrift records to set forth the rights and obligations of the financial institution; therefore, it argues, the joint venture agreement is barred unless recorded pursuant to § 1823(e).

---

11. Section 1823(e) applies to the RTC through 12 U.S.C. § 1441a(b)(4). *Resolution Trust Corp. v. Midwest Federal Sav.*, 4 F.3d 1490, 1499 (9th Cir.1993).

12. *Langley* held that the truthfulness of a warranted fact is a condition precedent of one's duty of payment and, if not in writing, is an invalid agreement under § 1823(e).

13. This argument is not explicitly articulated by the RTC since its briefs discuss *D'Oench, Duhme* and § 1823(e) simultaneously. The Court requested additional briefing on whether *D'Oench, Duhme* alone would bar the assertion of the joint venture and settlement agreements if § 1823(e) should not apply; however, the RTC neither conceded that *D'Oench* did not apply, nor specifically argued that *D'Oench* alone should bar the assertion of the two agreements. Because the Court finds that § 1823(e) does not apply to bar the assertion of the agreements at issue in this case, the Court addresses whether *D'Oench, Duhme* alone would bar plaintiff's claims.

Plaintiff, on the other hand, asserts, first, that its claims are not dependent on the joint venture agreement but on Gibraltar Saving's status as a partner and on Gibraltar's conduct.[14] Second, plaintiff contends that § 1823(e) does not bar the assertion of the joint venture agreement as a basis for the RTC's liability because the agreement does not defeat or diminish the RTC's interest in a particular asset acquired by it. Third, plaintiff argues that *D'Oench* alone does not bar its claims for two reasons: (1) the joint venture agreement is in writing and (2) plaintiff is not an obligor of Gibraltar, seeking to avoid its obligation by asserting its claims. Finally, plaintiff argues that the common law doctrine should not be interpreted to incorporate the statute's recordation requirements, particularly where plaintiff is in no sense an obligor of the bank.

### 1. § 1823(e) Does Not Bar The Assertion Of Plaintiff's Claims

The Court holds that 12 U.S.C. § 1823(e) does not bar the assertion of the joint venture agreement as a basis for plaintiff's claims since the agreement does not diminish the RTC's interest in a particular asset. The RTC argues that § 1823(e) should bar the assertion of the joint venture agreement since (1) it is an agreement and (2) liability for plaintiff's claims will diminish the general assets of the receivership.[15] The Court rejects this argument.

The Court notes that the joint venture agreement is without question an "agreement" within the definition of the statute.[16] However, the relevant issue here is whether in order to fall within § 1823(e) the agreement must diminish or defeat the RTC's interest in a particular asset acquired by the RTC, as opposed to the general assets of the receivership. The Court holds that it must.

First, by its plain language, the section applies to an "agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it ..." 12 U.S.C. § 1823(e). In addition, § 1823(e)(2) states as one of the four conditions to an agreement's validity, that the agreement must have been executed by the depository institution contemporaneously with the acquisition of the asset. 12 U.S.C. § 1823(e)(2). This requirement would have little meaning if the agreement at issue did not affect a particular asset of the bank, as opposed to the assets in general. *See, Thigpen v. Sparks,* 983 F.2d 644, 647 (5th Cir.1993) (warranty on sale of an asset is not an agreement barred by the section because no asset acquired by the FDIC); *Agri Export Coop. v. Universal Sav. Ass'n,* 767 F.Supp. 824, 833 (S.D.Tex.1991) (requiring a particular identifiable asset in order to apply § 1823(e) under this analysis of the statute).

■ Second, courts interpret § 1823(e) to require a separate, unrecorded agreement that diminishes the RTC's interest in the asset. *See, Commerce Federal Sav. Bank v. Federal Deposit Ins. Corp.,* 872 F.2d 1240, 1244 (6th Cir.1989) (§ 1823(e) applies to action or defense which is anchored to an agreement separate and collateral from the one the FDIC seeks to enforce); *Grubb v. Federal Deposit Ins. Corp.,* 868 F.2d 1151, 1158–59 (10th Cir.1989). In other words, for the section to apply, the RTC must have

---

**14.** The Court does not address this argument except to note that plaintiff has offered no evidence of Gibraltar Savings' conduct in developing and selling the condominiums other than its allegations in the complaint, and the inference that Gibraltar may have sold three condominiums directly as the owner. Plaintiff also seeks to rely on other evidence to establish that Gibraltar was a partner in the joint venture; however, this evidence of a partnership agreement would also have to survive the bar of § 1823(e) and *D'Oench* should then apply.

**15.** The RTC has made no claim that the joint venture agreement diminishes the RTC's interest in a particular asset it acquired when it took over Gibraltar.

**16.** In *Langley* the Supreme Court held that oral representations whose truth is a condition to one's duty to pay on a note is an agreement for purposes of the statute. *Langley,* 484 U.S. at 93, 108 S.Ct. at 402. Subsequent authority interprets "agreement" expansively, finding a wide range of conditions, oral or written, to be agreements for the purpose of the statute. *See, e.g., RTC v. Midwest Federal Sav.,* 4 F.3d 1490 (9th Cir.1993) (nonrecourse term of loan commitment letter an agreement which must satisfy § 1823(e)). Here, the parties do not dispute that the joint venture is an "agreement" within *Langley* 's definition.

acquired a right, title or interest in an asset, and second, a party must assert a separate, unrecorded agreement as the basis of a claim. This unrecorded agreement then can be said to diminish or defeat the interest of the RTC in the asset which it acquired when taking over the bank.[17]

The Ninth Circuit has not specifically addressed whether § 1823(e) requires (1) that the RTC have acquired a particular asset from the bank, and (2) the existence of a separate, side agreement which diminishes the RTC's interest in that particular asset. See, Murphy, 12 F.3d at 1494 (Norris, J. dissenting). However, the Ninth Circuit cases which construe the section do support this interpretation. This Circuit has consistently held that "[s]ection 1823(e) bars the use of extrinsic evidence to diminish or defeat the FDIC's interest in an asset, unless the documents meet specific requirements." Notrica, 2 F.3d at 964–65 (citing Zook Bros., 973 F.2d at 1450).[18]

In addition, the Ninth Circuit cases decided under § 1823(e) apply the section to bar defenses or counterclaims which affect the banking authorities' interest in specific, identifiable assets. See, e.g., RTC v. Midwest Federal Sav., 4 F.3d 1490 (9th Cir.1993) (reformation of loan documents to include nonrecourse provision upheld because side agreements satisfied recordation requirements of statute); Notrica, 2 F.3d at 964–66 (§ 1823(e) bars assertion that plaintiff's security interest in real property was senior to

lien held by FDIC where loan documents did not provide for recourse to bank's assets); Zook Bros., 973 F.2d at 1452 (§ 1823(e) barred assertion of loan agreements to avoid obligation under guaranty which was in accord with section); In re Century Centre, 969 F.2d at 838 (applying § 1823(e) to notes held by the bank which were allegedly subject to unwritten conditions). These cases indicate that a prerequisite to the application of the statute is an identifiable asset affected by the unrecorded agreement.

The recent opinion in Murphy is the only Ninth Circuit case which arguably supports the RTC's argument that the agreement asserted need not diminish the RTC's interest in a specific asset in order to invoke the section. The Murphy court held that § 1823(e) barred the assertion of a letter of credit because the bank had violated a federal banking statute which prohibited the extension of credit to affiliates without collateral, and both the letter of credit and lack of collateral were concealed from the FDIC. Murphy v. FDIC, 12 F.3d at 1492.

The Murphy court rejected the FDIC's contention that all transactions not carried on the books in accordance with § 1823(e) are barred. However, the court found that the letters of credit had an adverse impact on the assets of the bank as required for invocation of § 1823(e) because they were issued in violation of the collateral requirements of federal banking statutes. Id.[19] The Murphy court concluded as follows:

---

17. The Court notes that this interpretation of the statute dovetails with both the "bilateral agreement" and "no asset" exceptions to the D'Oench doctrine. The bilateral agreement exception to D'Oench holds that D'Oench does not bar defenses based on a clear and explicit "bilateral agreement." See, Gemini, 921 F.2d at 245–46 (letter was not a clear and explicit bilateral obligation for the bank to make an additional loan). The "no asset" exception to D'Oench and § 1823(e) holds that where the parties contend no asset exists due to circumstances independent of a side agreement, D'Oench and § 1823(e) do not apply. See, e.g., Federal Deposit Ins. Corp. v. Merchants Nat'l Bank, 725 F.2d 634, 639 (11th Cir.), cert. denied, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). These exceptions indicate that where the existence of the underlying asset is in question, or where the defenses asserted are not based on a true side agreement, D'Oench should not apply. Under similar reasoning, in order to

invoke § 1823(e), the bank, and hence the RTC, must first have a facially valid interest in an asset, before the assertion of a side agreement can be said to diminish that interest.

18. The Ninth Circuit recently reiterated in Murphy that the application of § 1823(e) does not depend upon the guilt of the parties, or their participation in the scheme which misled the banking authorities; "[w]hat matters is whether the agreement diminished the FDIC's interest in an asset acquired when it took over the bank, and whether the agreement was approved by the board of directors and properly recorded on the books and records of the bank." Murphy, 12 F.3d at 1492.

19. The court noted that had the PNB given collateral to the bank as security for the letters of credit and then made a secret agreement not to seek recourse against that security, § 1823(e)

"[t]hese letters of credit, and the absence of legally required collateral to back them up, were not properly approved or carried on the bank's records. The letters of credit have a palpable adverse impact on the assets of the bank as required for the invocation of § 1823(e)'s protection. The letters of credit issued in violation of the collateral requirements of federal law created obligations that could only be satisfied by assets of the bank acquired by the FDIC. Had the law been followed and collateral supplied, the remaining assets of the bank would not have been threatened. Section 1823(e) was passed to ensure that the FDIC does not have to honor such obligations." *Id.* at 1492.

Based upon this language, the RTC argues that *Murphy* indicates that no specific asset is required for the invocation of § 1823(e). The Court disagrees. First, the agreement at issue here, i.e., the joint venture, is not illegal. Thus, the illegality which apparently triggers the application of § 1823(e) in *Murphy* is not present. Second, the court in *Murphy* specifically rejects the contention that all transactions must be carried on the records of the bank pursuant to § 1823(e). *Murphy,* 12 F.3d at 1491 (*citing Agri Export,* 767 F.Supp. at 834: "RTC could not avoid payment on an otherwise valid letter of credit that involved no side agreement pertaining to a particular asset"). Finally, the court is careful to limit its holding, even in the context of letters of credit, to the particular letters at issue in that case. It is unclear to this Court what implication *Murphy* has to the interpretation of § 1823(e) outside the

specific context of the illegal issuance of letters of credit. Therefore, the Court does not find that *Murphy* supports holding that § 1823(e) bars agreements that do not diminish the RTC's interest in a particular asset.

Lastly, the RTC argues that authority from other circuits supports the proposition that there need not be a specific asset to invoke § 1823(e). However, the first line of authority cited by the RTC is decided under *D'Oench,* not its statutory counterpart. *See, e.g., OPS Shopping Center, Inc. v. Federal Deposit Ins. Corp.,* 992 F.2d 306 (11th Cir. 1993) (*D'Oench* barred suit against bank for nonpayment of letter of credit even though it did not relate to a specific asset of the bank and was a liability).[20] In addition, certain cases within this line of authority specifically hold that *D'Oench* is broader than § 1823(e), and therefore, *unlike the statute,* does not require that a specific asset be implicated by the side agreement. *See, e.g., Hall v. Federal Deposit Ins. Corp.,* 920 F.2d 334 (6th Cir.1990) (holding that unlike § 1823(e) the logic of *D'Oench* still may apply where there is no asset).

The second line of authority the RTC relies upon holds that the statute applies regardless of whether the party asserting the agreement is a debtor or creditor and regardless of whether the party was in a lending relationship with the bank. *See, North Arkansas Medical Center v. Barrett,* 962 F.2d 780 (8th Cir.1992) (agreement to pledge securities as collateral for jumbo certificates of deposit was barred by *D'Oench* and § 1823(e));[21] *but see, Thigpen v. Sparks,* 983

would be violated. The court reasoned that the transaction at issue to be functionally the same. *Id.*

20. This line of authority first, applies the *D'Oench* doctrine, not § 1823(e), and second, focuses upon whether, affirmative claims, whether contract or tort, are barred even though they do not technically implicate a specific asset. *See, Jackson v. Federal Deposit Ins. Corp.,* 981 F.2d 730 (5th Cir.1992) (*D'Oench* barred actions for breach of contract and promissory estoppel for failure to lend money despite promise to do so, although no specific asset at issue); *Timberland Design, Inc. v. First Service Bank,* 932 F.2d 46 (1st Cir.1991) (*D'Oench* bars affirmative claim to enforce oral loan commitment regardless of whether claims sound in contract or tort as long

as those claims arise out of an alleged agreement); *Hall v. Federal Deposit Ins. Corp.,* 920 F.2d 334 (6th Cir.1990) (Representations beyond the terms of the loan agreement could not be asserted in a claim for breach of the loan agreement; unlike § 1823(e) no asset was required for *D'Oench* ); *Bowen v. Federal Deposit Ins. Corp.,* 915 F.2d 1013 (5th Cir.1990) (oral promise to extend loan could not form basis of claims for promissory estoppel, breach of fiduciary duty and duty of good faith and fair dealing, and constructive fraud despite the lack of a note affected by the secret agreement).

21. In *North Arkansas Medical* the medical center placed one million dollars on deposit in the form of a jumbo certificate of deposit. The bank pledged collateral to cover the amount in excess

F.2d 644 (§ 1823(e) does not apply to alleged warranty on the sale of an asset because there is no particular asset and the gist of the dispute is neither a loan transaction, actual or contemplated, between a borrower and lender nor a conventional banking transaction of any kind).[22] Whether or not *North Arkansas* is correct in disregarding the distinction between debtors and creditors in applying § 1823(e), the holding does not imply that the agreement barred by § 1823(e) need not diminish or defeat the RTC's interest in a particular asset.[23] Not only would this interpretation rewrite the statute, but it does not follow logically from either line of cases discussed above. *See, Agri Export,* 767 F.Supp. at 833 ("What the RTC and Universal Savings want is not a construction of a statute, but in effect, an enlargement of it").

Therefore, the Court finds that because the joint venture agreement at issue does not diminish or defeat the interest of the RTC in any particular asset acquired by the RTC, § 1823(e) does not apply to bar the assertion of this agreement as a basis of plaintiff's claims.

### 2. D'Oench, Duhme Does Not Bar The Assertion Of Plaintiff's Claims

This brings the Court to the issue of whether *D'Oench, Duhme* operates to bar the assertion of the joint venture agreement. The RTC does not directly argue that the *D'Oench* doctrine alone would bar the assertion of the joint venture agreement. Instead, the RTC relies on both § 1823(e) and *D'Oench,* claiming that the two combined permit the RTC to rely exclusively on the books of the bank, and therefore bar the

assertion of any agreement not recorded pursuant to § 1823(e). Plaintiff on the other hand contends, first, that the joint venture agreement is in writing and was on the books of the bank, and second, that *D'Oench* does not apply to bar these claims because plaintiff is not an obligor of the bank.

The Court agrees with plaintiff: *D'Oench* does not bar the assertion of the joint venture agreement as a basis of plaintiff's claims. To begin, the Court notes that *D'Oench* alone cannot bar the agreement because the joint venture agreement is a clear and explicit written obligation. *See, e.g., Gemini,* 921 F.2d at 245 (*D'Oench* requires a clear and explicit written obligation; agreement to loan which is not fully documented is barred). The RTC does not argue that the joint venture agreement was not on the books of Gibraltar Savings as required to survive the *D'Oench* doctrine; instead, the RTC contends that the lack of ratification by the board of directors is fatal to the assertion of the agreement.

■ This is the crux of the RTC's position: that together *D'Oench* and § 1823(e) permit the RTC to rely exclusively on the records of the bank which are recorded pursuant to the statute's terms. For the following reasons, the Court rejects the RTC's position. First, though *D'Oench* has been extended to bar affirmative claims, whether tort or contract, and to protect the banking authorities, whether acting in their corporate or receivership capacity, it has not been held to incorporate the statutory requirements for recordation. *See, Murphy v. FDIC,* 12 F.3d at 1490 (holding that statute and *D'Oench* not

of the insurance. The medical center brought suit seeking a declaration that it had a perfected security interest in the FHLMC certificate on a theory of breach of contract. The court held that § 1823(e) barred the claim because it would diminish the FDIC's interest in the certificate. The court found that the statute applied regardless of whether the medical center was a creditor because the net worth of the bank could be equally distorted by a secret agreement with a creditor. *North Arkansas Medical,* 962 F.2d at 788–89.

**22.** The Court notes that the RTC has failed to distinguish between two lines of cases.

**23.** In *North Arkansas Medical Center,* the court found that the extent to which the bank's assets were encumbered by an unknown security inter-

est was concealed from the banking authorities, and therefore the agreement affected priorities among creditors rather than the bank's net worth. The Court questions this reasoning for reasons set forth in the following section of the Order; however, for the purpose of the Court's interpretation of § 1823(e) it is sufficient to note that to the extent *North Arkansas* holds that the agreement asserted need not implicate a specific asset the Court disagrees with the opinion. *See, Thigpen v. Sparks,* 983 F.2d at 648–49 (section applies to agreements tied to acquisitions of assets so cannot apply to alleged breach of a warranty by the bank when it sold an asset).

identical and rejecting contention that the FDIC need not honor any transaction recorded pursuant to § 1823(e)).

Second, though there may be situations where the common law doctrine and the statute combine to create a greater bar to the assertion of side agreements than each alone, an extension of the *D'Oench* estoppel is not warranted here. *See, Alexandria Associates v. Mitchell Co.*, 2 F.3d 598, 603 n. 33 (5th Cir.1993) (noting that prior extensions of *D'Oench* served to fill in the interstices in the relevant statutes, whereas the case at bar would include an unlimited and undefinable category of transactions). As the Court noted in its overview of the *D'Oench* doctrine, the common law rule precludes obligors from asserting side agreements which may mislead bank examiners as to the value of assets in its loan portfolio. *Zook Bros.*, 973 F.2d at 1450. The Homeowner's Association is not an obligor of Gibraltar Savings nor of the RTC.[24] Moreover, the joint venture agreement, though apparently not ratified by the board of directors, is not an unwritten secret agreement. Finally, the agreement does not mislead the banking authorities as to the value of its assets. The agreement creates the asset—the joint venture.[25]

Third, though the common law doctrine and its statutory counterpart typically serve to bar the same agreements, the Court has found no case where *D'Oench* has been applied to bar an agreement not somehow intertwined with a lending transaction. *See,*

*Agri Export*, 767 F.Supp. at 832 (*D'Oench* typically applies where a side agreement is inextricably entwined with a loan or other asset of the bank); *see also, Vernon I*, 907 F.2d at 1107 (in all cases save one the FDIC asserted or defended the validity of a particular debt or monetary obligation). To apply *D'Oench* and § 1823(e) in concert to bar the assertion of the joint venture agreement at issue here, would extend the doctrine far beyond estopping an obligor of the bank from asserting a side agreement which misleads the banking authorities concerning the value of its loan portfolio.

Lastly, few courts have explicitly defined the outer limits of the *D'Oench* doctrine and § 1823(e). This Court finds the reasoning of the Fifth Circuit to be persuasive. In *Thigpen v. Sparks* the Fifth Circuit held that a breach of warranty claim by a purchaser of a trust company from the bank was not barred by § 1823(e) because "the gist of the dispute is neither a loan transaction, actual or contemplated, between a borrower and lender nor a conventional banking transaction of any kind, but rather the bank's sale of an asset to Sparks, an individual who on the record ... had no other connection with the bank ..." *Thigpen*, 983 F.2d at 647. After noting that § 1823(e) did not apply because the FDIC had acquired no asset, the court pointed out that if claims arising from any agreement were barred by the statute absurd consequences would result: essentially all creditors' claims would be barred. *Id.* at 649.[26]

---

**24.** Extensive briefing was devoted to the innocent obligor exception to the D'Oench bar. *See, FDIC v. Meo*, 505 F.2d 790. The Court notes that this exception supports the Court's holding that D'Oench should not bar the Homeowner's Association from asserting its claim. The association is a third party to the joint venture agreement. It would not be possible to be more innocent—the Association is not an obligor of Gibraltar at all.

**25.** To the extent that the RTC is misled by being unaware of the potential tort claims that arise from its status as a partner of the joint venturer, these claims are no different than a claim for discrimination by a bank employee that arises from the bank's status as an employer, or a claim by a victim hit by the bank's armored car that arises from the bank's status as owner of the vehicle. The RTC would not expect that the employee's contract would be barred by § 1823(e) in the Title VII litigation as proof of

employment if the contract was not recorded pursuant to the statute. *See, Thigpen v. Sparks*, 983 F.2d at 649 (employee's claim that wrongfully denied reimbursement for travel expenses would under FDIC's reasoning be unenforceable unless it had jumped through the § 1823(e) hoops).

**26.** The court stated:

"A claimant who furnished office supplies to the failed bank could not assert a claim unless his contract was (1) in writing, (2) executed by him and the bank contemporaneously with the sale of office supplies, (3) approved and recorded in the bank's board of directors' minutes and (4) continuously maintained as a bank record. Such requirements would render unenforceable the claims of nearly all bank trade creditors. Take another example: if an employee claimed to have been wrongfully denied

In *Alexandria Associates v. Mitchell Co.*, 2 F.3d 598 (5th Cir.1993), the Fifth Circuit again addressed the limits of the protection afforded the federal banking authorities, holding that *D'Oench* did not apply to non-banking transactions such as the ordinary commercial sale by a bank's sub-subsidiary of interests in real estate ventures.[27] The court noted that first, the sale of the real estate ventures were non-banking transactions; second, the purposes of the recordation requirement and approval requirements of the statute would not be furthered by requiring bank boards or loan committees to consider, approve and record every transaction entered into by a bank and its subsidiaries; and finally, the court seriously questioned whether a third party involved in a non-banking transaction—particularly a transaction with subsidiaries—would be in a better position than depositors and creditors to protect itself. *Id.* at 603. Therefore the court found no reason to extend the common law *D'Oench* bar to the non-banking transaction at issue. *Id.* at 604.

The Court agrees with the reasoning of both *Thigpen* and *Alexandria Associates*. The cases which have disregarded this transactional limitation on the application of *D'Oench* doctrine are decided under § 1823(e), not *D'Oench*. *See, North Arkansas Medical*, 962 F.2d at 788 (§ 1823(e) ap-

plies to bar secured creditor's claim because it affects FDIC's interest in jumbo certificate of deposit); *Belsky v. First Nat. Life Ins. Co.*, 653 F.Supp. 80, 85 (D.Neb.1986), *aff'd on other grounds* 818 F.2d 661 (8th Cir.1987) (§ 1823(e) barred assertion of former vice president's claims that he had an interest in a life insurance policy).[28] These cases rely on the existence of an asset under § 1823(e), such as the life insurance policy in *Belsky*. The RTC cannot on the one hand rely on the recordation requirements of the statute, even though no asset is at issue, and on the other hand rely on the broad policies of *D'Oench*, even though the plaintiff is not an obligor involved in a lending transaction with the bank.[29]

The Court finds that what RTC seeks is an enlargement of § 1823(e) to further the goals of both *D'Oench* and § 1823(e). Though it is true that barring the joint venture agreement would further the goal of protecting the assets of the receivership, it would do so at the expense of the language of the statute and the remaining goals of *D'Oench*. *See, Agri Export*, 767 F.Supp. at 833. The Court agrees with the RTC that the most important purpose of *D'Oench* and § 1823(e) is to allow the bank examiners to rely exclusively on the books of the bank. *Zook Bros.*, 973 F.2d at 1451 ("it is beyond question that § 1823(e)

reimbursement for travel expenses, the "agreement" would, under FDIC's reasoning be unenforceable unless it had jumped through the § 1823(e) hoops. These results transform § 1821(d)(9)(A) from a provision protecting the failed bank's loan portfolio from *D'Oench*-like secret agreements into a meat-axe for avoiding debts incurred in the ordinary course of business. Far-reaching as some of FIRREA's provisions were, we doubt that this extravagant extension of § 1823(e) would have occurred, as it did, unremarked in the legislative history." *Id.* at 649.

**27.** In the Fifth Circuit the statutory and common law doctrines have been interpreted to be interchangeable. *Alexandria Associates*, 2 F.3d at 603 n. 31.

**28.** The exception to this is *Murphy v. FDIC* which applies § 1823(e) to bar the letter of credit because its issuance violated other federal banking statutes. Again the Court notes that the *Murphy* court rejected the FDIC's broad contention "that it need not honor any transaction that is not

carried on the records of the bank as described in § 1823(e)." *Murphy*, 12 F.3d at 1491.

**29.** The Court notes that its unwillingness to graft the requirements of § 1823(e) onto the common law *D'Oench* doctrine is supported by the FIRREA's treatment of creditors. Creditors (excluding insured depositors) of an insolvent bank such as Gibraltar are entitled to receive the liquidated value of their claim. When a failing bank is transferred by purchase and assumption, the acquiring bank does not necessarily assume all of the liabilities; thus some creditors are left with the failed bank. These creditors become creditors of the receivership estate, and the receiver has wide discretion in determining the worth of creditors claims and deciding upon an equitable distribution. *See*, Carrie Stradley Lavargna, *Government Sponsored Enterprises Are "Too Big To Fail": Balancing Public and Private Interests*, Hastings Law Journal Vol. 44, 991, 1029, (1993) (discussion of creditors). There is no reason that the Homeowner's Association should be in a position any different from other unsecured creditors of the receivership.

and *D'Oench* allow the FDIC to rely on official bank records to the exclusion of extrinsic matters"). This does not mean however that *D'Oench* should be interpreted to include the statute's recordation requirements. The Court agrees with both *Thigpen* and *Alexandria Associates* that to apply § 1823(e) and *D'Oench* without limitation would include an unlimited and undefinable category of transactions which would be barred the statute and common law doctrine working together.

Therefore, the Court holds that § 1823(e) and *D'Oench* do not raise a greater bar to the assertion of an agreement than each alone, where plaintiff is in no sense an obligor of Gibraltar Savings, and the agreement asserted is in no sense intertwined with a lending transaction. Plaintiff therefore is not barred from asserting the joint venture agreement to show that Gibraltar Savings and Gibraltar Management of Properties were partners in Cote d'Azur Associates.

### C. *Venture Corporation's Crossclaims*

Regarding Venture Corporation's crossclaim, RTC also asserts that *D'Oench, Duhme* and § 1823(e) bar Venture Corporation's crossclaim for defense and indemnification, whether based upon Gibraltar's status as a partner in the joint venture or the settlement agreement. RTC argues that because neither the settlement agreement nor the joint venture agreement was recorded in accordance with § 1823(e), Venture Corporation cannot assert a claim against the RTC which depends upon either agreement. The RTC also contends that the common law rule of *D'Oench, Duhme* is a bar to the assertion of the claims for defense and indemnification under the settlement agreement.

For the same reasons as discussed above, the Court rejects the RTC's position. First, the settlement agreement does not diminish or defeat the RTC's interest in a particular asset as required by § 1823(e). Rather, the agreement settles disputed claims to the assets of the joint venture. Second, the agree-

ment is a clear and explicit written obligation that was carried on the books of the bank. The only dispute is whether the board, which was not in existence due to the FSLIC conservatorship, ratified the agreement. Third, the settlement agreement is on its face a bilateral agreement and thus comes within the bilateral agreement exception to both *D'Oench* and § 1823(e). *See, Gemini,* 921 F.2d at 245 ("*D'Oench, Duhme* does not bar the assertion of defenses based on a bilateral obligation which appears in the bank's records"). Fourth, Venture Corporation is not an obligor of the bank: it is a former partner in the joint venture and as such it asserts claims for equitable indemnity. Moreover, as a party to the settlement agreement it asserts its claim for express indemnity.

Finally, the Court will not combine the disparate elements of § 1823(e) and *D'Oench, Duhme* in order to protect the general assets of the RTC's receivership, again at the expense of both the statute's language and the common law doctrine's limitations. Therefore, the Court holds that *D'Oench, Duhme* and § 1823(e) do not bar the assertion of the joint venture agreement or the settlement agreement as a basis for Venture Corporation's crossclaims for indemnity.

### V. *Conclusion*

For the above reasons, the Court DENIES defendant RTC's motion for summary judgment based upon *D'Oench, Duhme* and its statutory counterpart 12 U.S.C. § 1823(e). The Court finds that the statute does not bar the assertion of either the joint venture agreement or the settlement agreement, since neither agreement diminishes the RTC's interest in a particular asset it acquired when it took over the bank. *D'Oench* alone does not bar the assertion of either agreement because both agreements are clear and explicit written obligations which were on the records of the bank. Finally, the Court declines to extend the common law doctrine and its statutory counterpart beyond the language of the statute and the limitations—broad though they are—of the

doctrine in this case.[30]

IT IS SO ORDERED.

---

30. The Court notes that the RTC listed numerous affirmative defenses in its answer that have not yet been briefed. The Court suggests that an appropriate next step in this litigation is for the parties to determine which of these defenses should be briefed prior to preparing for trial.