**FEDERAL DEPOSIT INSURANCE CORPORATION,**
Plaintiff–Appellee,

Continental Illinois National Bank & Trust Company of Chicago, Plaintiff,

Federal Deposit Insurance Corporation, as Receiver of First National Bank and Trust Company of Oklahoma City, Oklahoma, Plaintiff–Counterclaim Defendant,

v.

Ray BELL; Atex Oil Company; Atex Oil Company of Texas; Atex Stations, Inc.; Atex Refining Company; Anderson–Prichard Pipe Line Corporation; Atex Oil Company of Oklahoma Inc.; Anson Pipeline Co.; Anson Refining Co.; Atex Pipeline Co.; and Oklahoma Pipeline Co., Defendants–Appellants.

OKLAHOMA PIPELINE CO.; Atex Pipeline Co.; and Atex Oil Company of Oklahoma Inc., Defendants–Third–Party Plaintiffs–Appellants,

and

Meridith R. Sheets, Inc., Defendant,

v.

Trudy PERRY, Third–Party Plaintiff.

No. 88–2167.

United States Court of Appeals, Tenth Circuit.

Dec. 15, 1989.

Rehearing Denied Feb. 5, 1990.

---

Oliver S. Howard (Theodore Q. Eliot and Pamela S. Anderson with him on the brief) of Gable & Gotwals, Tulsa, Okl., for plaintiff-appellee.

Paul Tobin (Murray Cohen with him on the brief) of Cohen, Pluess & Tobin, P.C., Oklahoma City, Okl., for defendants-appellants.

Before MOORE, BRORBY and EBEL, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The question presented by this appeal is whether the rule of *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), applies to an alleged failure to disclose a material fact. We hold that it does, and therefore the Federal Deposit Insurance Corporation is

entitled to the shield provided by 12 U.S.C. § 1823(e).

Oklahoma Refining Company (ORC), an Oklahoma general partnership, owned and operated two oil refineries and a pipeline system. The partners of ORC were An-Son Transportation Company, which held a 66% share, and Atex Refining Company, which owned the balance. Loans from Continental Illinois National Bank (CINB) and First National Bank of Oklahoma City (FNB) funded ORC's operations and acquisitions.

In 1983, after CINB and FNB loaned An-Son an aggregate of $30 million, certain officials within CINB recommended An-Son dispose of its interest in ORC because of ORC's questionable financial status.[1] Included in CINB's internal documents was a report prepared by one of its staff valuing ORC's properties at $22.3 million. This report substantially belied previous representations made to the president of Atex, defendant, Ray Bell, whom CINB had approached, suggesting the purchase of An-Son's interest in ORC.

In 1983, Mr. Bell made that purchase, and at the same time assumed a 100% guaranty of ORC's obligations to Continental Illinois National Bank and First National Bank of Oklahoma City. ORC continued operations until September 1984, when it filed a petition for bankruptcy relief after it was unable to obtain further bank credit.

Both CINB and FNB filed an action against Mr. Bell to recover on the guaranties. Mr. Bell counterclaimed for securities and common law fraud, claiming he had been fraudulently induced to buy out An-Son's interest by CINB's misrepresentation of the value of ORC. Acting in its corporate capacity, the Federal Deposit Insurance Corporation subsequently succeeded to the interests of both CINB and FNB in the prosecution of the suit and the defense of Mr. Bell's counterclaims.

Relying on *Langley*, the FDIC moved for summary judgment on the counterclaims under 12 U.S.C. § 1823(e), which provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

FDIC took the position that even though Mr. Bell claimed CINB's fraud consisted of failure to make complete disclosure of its internal evaluation of ORC's properties rather than overt false representations, *Langley* provided FDIC with a complete defense to the counterclaims. The trial court agreed and entered summary judgment for the FDIC on the counterclaims. Mr. Bell appeals that decision.

Mr. Bell concedes that if his counterclaims were based upon overt fraudulent representations, *Langley* would govern, and he would be deprived of his claims. He argues, however, *Langley* does not apply to transactions involving the omission of facts, such as CINB's failure to tell him of its internal evaluations because those transactions cannot give rise to the essential "agreement" which requires application of § 1823(e).

We believe *Langley* allows no room for the distinction Mr. Bell would have us draw. One of the keystones in *Langley* is the Court's conclusion that § 1823(e) is not confined to a "secret promise" to perform an act in the future. The Court assumed a broader meaning for the word "agreement" in the statute, and concluded the word must be interpreted to include any condition upon the performance of a contract, including warranties grounded in

---

1. CINB and An-Son had maintained a lending relationship for over 20 years, and ORC's status was seen to imperil An-Son's ability to repay its existing debt to CINB.

fraud. 108 S.Ct. at 401–02. Countering the suggestion that a fraudulent misrepresentation known to the FDIC cannot support application of § 1823(e), the Court stated,

> We conclude, however, that neither fraud in the inducement nor knowledge by the FDIC is relevant to the section's application.
>
> No conceivable reading of the word "agreement" in § 1823(e) could cause it to cover a representation or warranty that is bona fide but to exclude one that is fraudulent. Petitioners effectively acknowledge this when they concede that the fraudulent nature of a *promise* would not cause it to lose its status as an "agreement".

*Id.* at 402. Since the Court included fraudulent warranties within the definition of "agreement" without circumscribing fraud to overt acts, we see no basis for concluding one form of fraud is governed by § 1823(e) while another is not. If fraudulent warranties fall within the reach of the statute, it is irrelevant whether the fraud was caused by overt misrepresentation or deceitful omission. We therefore conclude *Langley* compels the result reached by the district court.

AFFIRMED.