**FEDERAL DEPOSIT INSURANCE CORPORATION as Manager of the Federal Savings and Loan Insurance Corporation Resolution Fund, as Receiver for Centennial Savings and Loan Association, a Federal Savings and Loan Association, Guerneville, California, Plaintiff,**

v.

**Alice HUDSON, Defendant.**

**No. C89–0322 DLJ.**

United States District Court, N.D. California.

March 15, 1990.

Richard Frank, John W. Crittenden, James R. Batchelder, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., Office of the Gen. Counsel, Federal Home Loan Bank Bd., Jordan Luke, Gen. Counsel, Jack D. Smith, Deputy Gen. Counsel, Dorothy L. Nichols, Sr. Associate Gen. Counsel, and Cassandra N. Jones, Trial Atty., Washington, D.C., for plaintiff.

John F. Banker, P.C., Tiburon, Cal., for defendant.

## ORDER

JENSEN, District Judge.

On February 21, 1990, this Court heard plaintiff's motion for judgment on the pleadings. After consideration of the relevant pleadings, affidavits and argument of counsel, the Court GRANTS plaintiff's motion for judgment on the pleadings.

### I.

This action is brought by the Federal Deposit Insurance Corporation ("FDIC") as receiver for Centennial Savings and Loan Association ("Centennial") for repayment of a line of credit demand loan executed by

defendant on May 30, 1984 in favor of Centennial. The note was in the principal amount of $37,500.00 with interest to be accrued at the rate of 13.5 percent per annum. As of February 2, 1989, when the complaint was filed, the amount of principal and interest outstanding totalled $20,488.01.

The loan was part of a plan to buyout Centennial stock held by Siddarth S. Shah. The plan was arranged by Centennial's president, Erwin Hansen. Shah owned 24 percent of Centennial stock, which made him an "affiliated person" within the meaning of the Federal Home Loan Bank Act. The purpose of the stock buyout plan was to reduce Shah's holdings of Centennial stock below 10 percent and was designed to counter criticism by the Federal Home Loan Bank Board ("FHLBB") as to a conflict of interest in regard to several transactions between Centennial and Shah, and his controlled corporation Lakewood Enterprises.

As part of the plan, Centennial financed the downpayment on the stock sale by advancing each purchaser of stock a line of credit loan while Shah agreed to take back promissory notes for the balance. Centennial's board of directors, of which Hudson was a member, approved Centennial's partial financing of the stock buyout and Centennial notified the FHLBB of its terms. On May 30, 1984, defendant executed the note at issue in order to purchase the stock. She initially made payments on the note but has since ceased to pay.

Defendant admits all material facts relating to the express terms of the stock purchase and the loan but alleges as a single affirmative defense that she is not obligated to repay the loan because of fraudulent material nondisclosures by Shah and Hansen which induced her to purchase the stock at an inflated price. Defendant contends that Centennial, through Shah and Hansen, failed to disclose 1) the contingent nature of the real estate sales on which Centennial's 1983 earnings were based and which rendered those earnings illusory;

and 2) that Centennial had been insolvent since late 1983 but that management had raised operating funds through a secret loan and a check kiting scheme. Defendant contends that these facts were material in that had she known the true nature of Centennial's financial status she would not have purchased the stock and would therefore have never made the loan.

The FDIC now moves for judgment on the pleadings. It asks for an award of costs and attorneys fees as well as unpaid principal and interest in the amount of $20,581.83 from defendant Ross.

## II.

■ In determining a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a court must accept the allegations of the nonmoving party as true, while the allegations of the moving party which have been denied by the non-moving party are assumed to be false. *Hal Roach Studios v. Richard Feiner and Co.*, 883 F.2d 1429, 1436 (9th Cir.1989). The court should grant judgment on the pleadings only if the moving party clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.*

■ In this case, defendant has admitted all material facts regarding the express terms of the loan. Therefore, the only issue remaining is whether the longstanding doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941), and its progeny bars defendant from asserting her affirmative defense. *D'Oench* involved a facially valid promissory note, executed without valid consideration, with the secret understanding that the borrower would not be required to repay the loan. The note was executed to hide the fact that the bank had past due bonds. The United States Supreme Court held that the FDIC could enforce the note in spite of the secret agreement because of the federal policy to protect the FDIC and

the public funds which it administers against misrepresentations as to the validity of the assets of insured institutions. *Id.* at 457, 62 S.Ct. at 679. The test of whether the *D'Oench* rule applies is "whether the note was designed to deceive the creditors or the public authority or would tend to have that effect." *Id.* at 460, 62 S.Ct. at 681.

The *D'Oench* doctrine is codified in Title 12, United States Code section 1823(e) ("Section 1823(e)") which states that:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e) (1989).

In *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court applied *D'Oench* and Section 1823(e) in holding that defendants who executed a promissory note to finance a land purchase induced by affirmative misrepresentations made by the lending bank's president were estopped from asserting the defense of fraud against the FDIC as receiver of the bank. The bank's president had falsely overstated the amount of land encompassed by the agreement and had falsely represented that the land was unencumbered by mineral leases.

The *Langley* Court expanded the scope of *D'Oench* by holding that the term "agreement" within the meaning of Section

1823(e) includes misrepresentations constituting fraud in the inducement in addition to an express fraudulent promise to perform an act in the future as decided by *D'Oench.* The Court explained that the purposes of Section 1823(e) would be undermined if an element of a loan agreement as fundamental as a condition upon the obligation to repay is excluded from the meaning of the term "agreement." *Id.* Those purposes included 1) allowing federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets; 2) ensuring mature consideration of unusual loan transactions by senior bank officials; and 3) preventing fraudulent insertion of new terms with the collusion of bank employees, when a bank appears headed for failure. *Id.* 484 U.S. at 91–92, 108 S.Ct. at 401.

The Court distinguished fraud in the factum, which would render the instrument entirely void and thus leave no "right, title or interest" of the FDIC which could be diminished or defeated, from fraud in the inducement which merely renders the note voidable and thus allows the lending bank to transfer the requisite valid title or interest in the note to the FDIC. *Id.* 484 U.S. at 93, 108 S.Ct. at 402. The Court, in furtherance of the paramount concern for public policy, explained that "[i]f voidable title were not an 'interest' under § 1823(e), the FDIC would be subject not only to undisclosed fraud defenses but also to a wide range of other undisclosed defenses that make a contract voidable, such as certain kinds of mistakes and innocent but material misrepresentations." *Id.*

Hudson's main contention is that the *D'Oench* line of cases and Section 1823(e) apply only to affirmative misrepresentations and secret agreements whereas in her case Centennial fraudulently failed to disclose essential facts to an innocent borrower. Defendant's argument that *D'Oench* does not apply to nondisclosures was recently addressed in *FDIC v. Bell,* 892 F.2d 64 (10th Cir.1989). In *Bell,* the FDIC as receiver for the lending bank brought suit

to recover guarantees on loans by Bell. Bell counterclaimed for securities and common law fraud. The FDIC moved for summary judgment on the counterclaims and the Tenth Circuit held that the FDIC was immune from the counterclaims pursuant to Section 1823(e), regardless of whether the fraud was caused by overt misrepresentation or deceitful omission. *Id.* at 66. The Court held that "[s]ince the [*Langley*] Court included fraudulent warranties within the definition of 'agreement' without circumscribing fraud to overt acts, [it saw] no basis for concluding one form of fraud is governed by § 1823(e) while another is not." *Id.*

Although *Bell* was decided by the Tenth Circuit and therefore is not binding, the Court finds the *Bell* decision persuasive as a logical extension of *Langley.* Even though the resulting rule may be a harsh one, it is justified by the overriding need to protect the FDIC and the nation's banking system.

■ Hudson also asserts that *D'Oench* does not apply because the secret loan and check kiting scheme by the Centennial management was allegedly known or should have been known to auditors of Centennial and that the agreement itself was recorded in the board of directors meetings, so the information was available to the FHLBB and subsequently the FDIC. However, *D'Oench* applies regardless of whether the FDIC knows of the misrepresentation prior to its acquisition of the note. *Langley,* 484 U.S. at 93–95, 108 S.Ct. at 402–03. As a result, defendant's sole affirmative defense is barred as a matter of law.

■ Defendant further claims that the sale of stock violated federal securities law and thus the loan at issue is void under Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc as against the FDIC.[1] However, even if Centennial would

be liable for the acts of Shah and Hansen and thus the loan transaction would fall within the federal securities laws, the loan would be considered voidable rather than void. *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 386–88, 90 S.Ct. 616, 622–23, 24 L.Ed.2d 593 (1970). Therefore, it would constitute a "right, title or interest" that could be diminished or defeated, and the public policy considerations of *Langley* would still apply. *See Langley,* 484 U.S. at 93, 108 S.Ct. at 402.

■ Finally, defendant claims that even if both *Langley* and *Bell* apply, there remains a factual issue as to whether she has complied with the requirements of Section 1823(e). Although it is unclear from the cases as to exactly what defendant must state in the written agreement so as to give the FDIC the requisite warning that a loan may be qualified, it appears that defendant has failed to provide *any* written warning.

Defendant claims that her loan was somehow contingent on the viability of Centennial and its stock. However, as pleaded in her amended answer, the terms of the agreement recorded in the minutes of Centennial's board of directors meetings and in Centennial's accounting books do not indicate that the loan was qualified in any way. Defendant is asserting unwritten terms of an agreement. This situation is exactly what the *D'Oench* doctrine and Section 1823(e) disallows. Therefore there can be no factual question remaining as to compliance with Section 1823(e).

## III.

Because there are no material issues of fact remaining, and defendant's sole affirmative defense is barred by the *D'Oench* doctrine and its progeny, plaintiff is entitled to judgment as a matter of law. Consequently, plaintiff's motion for judgment on the pleadings is GRANTED. Plaintiff is to submit a proposed judgment consistent

1. Although not expressly stated, the Court assumes that defendant adopts the arguments pro-

mulgated by defendant Underwood.

with this Order within 10 days of the date of this Order.

IT IS SO ORDERED.