**AVIREZ, LTD., Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION,
Defendant.**

No. CV 93–5764–ABC.

United States District Court,
C.D. California.

Feb. 10, 1995.

Bryan King Sheldon, Los Angeles, CA, for plaintiff.

Benjamin F. Parks, Duane E. Okamoto, Newport Beach, CA, for defendant.

## ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

COLLINS, District Judge.

Defendant's motion for summary judgment or in the alternative, summary adjudication of issues came on regularly for hearing before this Court on January 30, 1995. After reviewing the materials submitted by the parties, argument of counsel, and all other matters presented to the Court, it is hereby

ORDERED that Defendant's motion for summary judgment is GRANTED as to the fraud, negligent misrepresentation and declaratory relief causes of action. Defendant's motion for summary judgment is also GRANTED on its counter-claim for breach of contract.

## I. Background

Plaintiff Avirex, Ltd. claims Defendant Columbia Savings and Loan Association ("Columbia") fraudulently induced it to enter a written lease agreement ("Lease") by failing to disclose the existence of subsurface petroleum contamination on the property. On or about September 1, 1988, Plaintiff entered into a ten-year lease agreement with Columbia whereby Plaintiff leased retail space located at 9601 Santa Monica Boulevard, Beverly Hills, California.[1] Plaintiff operates a retail clothing and leather goods store known as "The Cockpit" at this location. Under the lease, Plaintiff was to make monthly payments of $14,532.00 subject to yearly increases and other costs.

Columbia undertook construction of the commercial building which Plaintiff now occupies in 1987. As part of its pre-construction efforts, Columbia did routine environmental testing through an environmental contractor who found non-actionable amounts of petroleum contamination existed beneath the surface of the site. In reliance on this report, Columbia completed construction and took several precautionary measures such as over-excavating and recompacting the entire lot with clean soil. In March 1991, Defendant Resolution Trust Corporation ("RTC" or "Defendant") was appointed Receiver for Columbia, and Plaintiff's lease was transferred to the RTC.

Plaintiff claims Columbia failed to disclose the subsurface petroleum contamination prior to entering the Lease agreement. According to Plaintiff, it learned of the contamination for the first time in 1992. Plaintiff also claims it never would have entered into the Lease or spent money on improvements

to the building had it known of the contamination.

In November 1993, Plaintiff began tendering rent payments in an amount less than its monthly rental obligation under the Lease. Plaintiff contends that the current market value of the leased premises is less than the terms specified under the Lease. Defendant returned Plaintiff's reduced rent payments for the months of December 1993 and January–April 1994 and ordered Plaintiff to submit full rent payments in accordance with the Lease. When Plaintiff refused, Defendant accepted the lower rent payments to mitigate its damages.[2]

In the Complaint, Plaintiff alleges causes of action for fraud, negligent misrepresentation and declaratory relief for rescission of the Lease agreement between Plaintiff and Columbia. Specifically, Plaintiff claims Columbia's failure to disclose the contamination in 1988, when the parties entered into the Lease, gives Plaintiff the right to rescind the agreement.

## II. Discussion

### A. Summary Judgment Standard.

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir.1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)). Furthermore, if the moving party has the burden of proof at

---

1. The 9601 Santa Monica Boulevard property had formerly been the site of a gas station and underground storage tanks had been employed there.

2. Defendant has filed a counterclaim in this action for breach of the Lease Agreement.

trial, that party must establish peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

█ If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2553. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

█ Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. at 2510.

### B. *Analysis*

Defendant argues that Plaintiff's fraud and misrepresentation claims must fail because neither California law nor the express terms of the Lease itself imposed a duty on Columbia to disclose the subsurface contamination to Plaintiff prior to entering the Lease. According to Defendant, the statutory duty upon which Plaintiff relies did not apply to prospective lessees at the time the parties entered the Lease. More importantly, Defendant claims Plaintiff's claims are barred under the *D'Oench* doctrine and 12 U.S.C. §§ 1823(e), 1821(d)(9)(A) because the claims rest upon an unrecorded collateral agreement or warranty. According to Defendant, a private party cannot enforce against a federal deposit insurer any obligation not memorialized in a written document.

Plaintiff counters that Defendant had a common law duty as a landlord to disclose the contamination. In addition, Plaintiff argues the *D'Oench* doctrine is not applicable to fraud or negligence committed by a failed financial institution unless the parties are engaged in a lending or some other banking-related transaction.

### 1. *D'Oench Doctrine and 12 U.S.C. § 1823(e)*

As a threshold matter, the Court must determine whether Plaintiff can bring its claims against the RTC. Plaintiff's claims are based entirely upon Columbia's alleged non-disclosure of the subsurface contamination. Defendant claims these claims are barred by the *D'Oench* doctrine and 12 U.S.C. § 1823(e) because there is no written agreement recorded in Columbia's official books and records giving Plaintiff a warranty of non-contamination for the leased property.

█ The *D'Oench* doctrine is a federal common law rule of equitable estoppel which precludes an obligor from asserting against the FDIC/RTC, as the basis for a defense or an affirmative claim, a secret, side agreement which is not reflected in the records of the bank and may therefore mislead the bank examiners concerning the value of the written loan obligations. *FDIC v. Zook Bros. Constr. Co.,* 973 F.2d 1448 (9th Cir.1992). The doctrine originated in the namesake case of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In that case, the Supreme Court held that a borrower was precluded from defending against the FDIC on the basis of a secret, unrecorded, side agreement which allegedly

altered the terms of an obligation carried on the books of the bank. *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680. The Supreme Court based its ruling upon the "federal policy to protect [FDIC], and the public funds which it administers against misrepresentation as to the securities or other assets in the portfolios of banks which [it] insures or to which it makes loans." *Id.* at 457, 62 S.Ct. at 679. To invoke this rule of equitable estoppel, Defendant must show that the agreement relied upon is not within the bank's records.

■ Congress partially codified the *D'Oench* doctrine in the Federal Deposit Insurance Act of 1950, 12 U.S.C. § 1823(e).[3] Section 1823(e) bars the use of extrinsic agreements to diminish or defeat the FDIC's interest in an asset, unless the documents meet the specific requirements laid out in the statute.[4] *Notrica v. FDIC*, 2 F.3d 961 (9th Cir.1993). The effect of section 1823(e) is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).[5] Section 1821(d)(9)(A) provides that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation." Thus, both the *D'Oench* doctrine and section 1823(e) pre-clude claims based on unrecorded agreements or obligations.

Plaintiff, however, argues that neither the *D'Oench* doctrine nor section 1823(e) are applicable to the instant matter because the parties are not involved in a lending relationship or a banking-related transaction. Plaintiff notes that nearly all of the cases cited to the Court applying either section 1823(e) or the *D'Oench* doctrine involve lending or other banking-related transactions. Specifically, most of these cases concern attempts by debtors of a failed institution to avoid repayment of a loan based upon a purported side agreement by the failed institution not to enforce the written terms of the obligation. *See e.g. RTC v. Allen*, 16 F.3d 568 (4th Cir.1994); *Community Bank of Ozarks v. FDIC*, 984 F.2d 254 (8th Cir.1993); *FDIC v. Zook Bros. Constr., Co.*, 973 F.2d 1448 (9th Cir.1992). In contrast, the parties in this case were not involved in a lending relationship. Thus, Plaintiff contends that the *D'Oench* doctrine and section 1823(e) do not apply here as the parties were engaged in a non-banking related transaction.

Plaintiff relies on *Cote D'Azur Home-owners Ass'n v. Venture Corp.*, 846 F.Supp. 827 (N.D.Cal.1994), to support its position. There the court found that the *D'Oench* doctrine did not bar the claim of a homeowners association against the RTC for construction defects in condominiums because, among other things, the parties were not in a lending

---

**3.** As amended, 12 U.S.C. § 1823 provides:
No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such *agreement*—
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of the said board or committee, and,
(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e) (emphasis added).

**4.** Section 1823(e) applies to the RTC as well as the FDIC. *RTC v. Midwest Fed. Sav. Bank*, 4 F.3d 1490 (9th Cir.1993).

**5.** "Section 1823 is a statutory mandate that stands independent of the *D'Oench* equitable underpinnings." *Murphy v. FDIC*, 12 F.3d 1485 (9th Cir.1993), *vacated on other grounds*, 38 F.3d 1490 (9th Cir.1994). Although section 1823(e) and *D'Oench* are often asserted simultaneously and serve to effectuate the same policy concerns, they are not identical. *Murphy*, 12 F.3d at 1490. For example, the requirements of section 1823(e) apply regardless of the borrower's conduct or participation in a scheme to deceive the banking authorities. However, there is an exception under the *D'Oench* doctrine when the borrower is completely innocent of any intentional or negligent wrongdoing. *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974).

relationship. *Id.*[6] In dicta, the *Cote D'Azur* court adopted the Fifth Circuit's reasoning that section 1823(e) and the *D'Oench* doctrine do not apply to non-lending transactions. *Id.* (citing *Thigpen v. Sparks*, 983 F.2d 644 (5th Cir.1993); *Alexandria Assocs. v. Mitchell Co.*, 2 F.3d 598 (5th Cir.1993)).

### 2. *Applicability of D'Oench Doctrine to Plaintiff's Claims*

The Ninth Circuit has not addressed the applicability of either the *D'Oench* doctrine or section 1823 outside the context of conventional banking transactions. Plaintiff correctly notes that most of the cases applying section 1823(e) and the *D'Oench* doctrine apply to banking-related transactions. With respect to the *D'Oench* doctrine, case law establishes that this rule of estoppel precludes *obligors* from asserting a written side agreement which may mislead bank examiners concerning the value of written *loan* obligations. *See Zook Bros.*, 973 F.2d at 1450. The Court has found no case in which *D'Oench* has been applied to bar an agreement not somehow intertwined with a lending transaction. *See e.g. Cote d'Azur Homeowners Ass'n v. Venture Corp.*, 846 F.Supp. 827, 832 (N.D.Cal.1994). Although since its creation, the *D'Oench* doctrine has been continually expanded to further the goals of the doctrine, none of these extensions apply the doctrine beyond conventional banking transactions.

■ Moreover, the Ninth Circuit's explanation of the *D'Oench* doctrine's purpose provides further support for restricting the application of the doctrine to lending or banking-related transactions.[7] Thus, the Court finds the *D'Oench* doctrine is inapplicable beyond the conventional banking and lending context. In the instant case, Columbia was not making a loan or issuing a letter of credit to Plaintiff. Rather, the parties were in a *completely separate business transaction*, unrelated to banking, in which Columbia was essentially functioning as Plaintiff's landlord. Because the parties were in a landlord/tenant relationship independent of any banking or lending transaction, the Court finds that the *D'Oench* doctrine does not bar Plaintiff's claims of nondisclosure.

### 3. *Applicability of Section 1823(e)*

■ However, the *D'Oench* doctrine and section 1823(e), although often asserted simultaneously, are not identical. *Murphy v. FDIC*, 12 F.3d 1485, 1490 (9th Cir.1993), *vacated on other grounds*, 38 F.3d 1490 (9th Cir.1994). While they effect the same policy concerns, their requirements are different. Section 1823(e) actually *"expands D'Oench in that it applies to any agreement regardless of whether or not it is secret and regardless of the maker's participation in the scheme."* *Id.* (emphasis in original). At the same time, section 1823(e) is narrower because it only applies to "agreements" and not other defenses. *Id.* Although the case law construing section 1823(e) primarily focuses on disputes involving lending transactions, the language of section 1823(e) places no such transactional limitations on the statute's application.

■ Instead, the broad language of section 1823(e) states that *"[n]o agreement* which tends to diminish or defeat the interest of the [FDIC] in any asset ... shall be valid against the [FDIC]" unless the specific requirements of the statute are met. 12 U.S.C. § 1823(e). The statute neither distinguishes among various types of agreements nor limits the context in which the statute applies. Additionally, the statute's broad language is consistent with its underlying policy concern of allowing bank examiners to rely on a bank's records when evaluating the worth of its assets. *See Langley*, 484 U.S. at 92, 108

---

**6.** In *Cote d'Azur*, the failed institution had been a partner in a joint venture that built the condominiums.

**7.** *In re Century Centre Partners*, 969 F.2d 835 (9th Cir.1992), the Ninth Circuit stated that the *D'Oench* doctrine favors the "interests of depositors and creditors of a failed bank, who cannot protect themselves ... over the interests of *bor-*

*rowers* who can." *Id.* at 839 (emphasis added). In *Murphy v. FDIC*, 12 F.3d 1485 (9th Cir.1993), *vacated on other grounds*, 38 F.3d 1490 (9th Cir.1994), the Court noted that the *D'Oench* doctrine provides an incentive to bank officials to give mature consideration to *"unusual lending agreements"* in order to prevent fraudulent transactions. *Id.* at 1490.

S.Ct. at 401. An unrecorded agreement which tends to diminish an asset will hamper a bank examiner's efforts to ascertain a failed institution's worth whether the agreement arises from a lending transaction or some other non-banking transaction. Therefore, all that is required to invoke the statute is that the agreement upon which a party bases its claims tends to diminish an interest of the RTC in an asset. Accordingly, the Court finds that section 1823(e) is not confined to disputes defined as lending or other banking-related transactions.[8]

### 4. Section 1823(e) Covers Plaintiff's Claim of Non–Disclosure

■ Because Plaintiff's claims are based upon a failure to disclose as opposed to an unrecorded "agreement" or an affirmative misrepresentation, the next issue is whether a claim of failure to disclose constitutes an "agreement" under section 1823(e). Although the Defendant has not cited any Ninth Circuit authority addressing this issue, a line of federal decisions extends section 1823(e) to claims for fraud and misrepresentation based on non-disclosures of fact. *McCullough v. FDIC*, 987 F.2d 870 (1st Cir. 1993); *FDIC v. Bell*, 892 F.2d 64 (10th Cir. 1989), *cert. dismissed*, 496 U.S. 913, 110 S.Ct. 2607, 110 L.Ed.2d 286 (1990); *FDIC v. Hud-*

*son*, 800 F.Supp. 867 (N.D.Cal.1990). These cases conclude that an unlawful omission is a form of "agreement" to which section 1823(e) applies. The reasoning behind this extension is that non-disclosures of fact are equivalent to an affirmative misrepresentation or "warranty" of a particular fact for purposes of compliance with section 1823(e). *See Id.*[9] The Court is persuaded by the reasoning in these cases. The application of section 1823(e) to claims of non-disclosure is both consistent with the statute's underlying policy considerations and a logical extension of the reasoning in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), in which the Supreme Court explained that the term "agreement often has a wider meaning than ... a promise." *Id.* at 92, 108 S.Ct. at 401.[10] Moreover, to the extent that Plaintiff's non-disclosure claim is inconsistent with the Lease, it undermines the RTC's ability to rely on the bank's official records to evaluate the worth of Columbia's assets. Section 1823(e) is aimed at eliminating precisely this type of unreliability. Thus, the Court finds that section 1823(e) applies as much to misrepresentation claims based upon non-disclosures as to those based upon affirmative assertions. Accordingly, Plaintiff's claim that Columbia failed to disclose contamination is equivalent to an assertion that Columbia gave a warranty that no subsurface con-

---

8. Plaintiff relies on *Falk v. Mt. Whitney Sav. & Loan Ass'n*, 983 F.2d 156 (9th Cir.1993), for the proposition that section 1823(e) does not apply to non-banking transactions. In *Falk*, the plaintiff sought the reconveyance of a parcel of land mistakenly conveyed to the purchaser. The failed institution held the deed of trust for the 1.65 acres which was mistakenly reconveyed. However, in *Falk*, section 1823(e) was not applicable because the FDIC, as the receiver for the failed bank, never acquired an interest in the 1.65 acre parcel of land around which the dispute centered.

In support of its position, Plaintiff points to a sentence in *Falk* that states "section 1823(e) was codified and was 'meant to offer as much protection as the common law rule in *D'Oench.*'" The Court does not disagree. In fact, the Court finds that section 1823(e) offers *more* protection than *D'Oench* doctrine if a party relies on a specific agreement. *See Murphy*, 12 F.3d at 1490. In addition, the statute applies regardless of whether a party was innocent or whether he lent himself to a scheme or arrangement by which the banking authority was likely to be misled. Thus, the Court concludes that section 1823(e)

reaches Plaintiff's claims while the *D'Oench* doctrine does not.

9. In addition, in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court noted that the term "agreement" in section 1823(e) has a wider meaning than a promise and can embrace warranties, the truthfulness of which is a condition to one party's performance of the contract. *Langley*, 484 U.S. at 92, 108 S.Ct. at 401.

Similarly, in *Bell*, the Tenth Circuit provided the following persuasive reasoning in its ruling that section 1823(e) applied to fraud claims based on alleged non-disclosure. The Court stated:

"[s]ince the *[Langley]* Court included fraudulent warranties within the definition of 'agreement' without circumscribing fraud to overt acts, [it saw] no basis for concluding one form of fraud is governed by § 1823(e) while another is not."

*Bell*, 892 F.2d at 66.

10. *Langley* provides the Supreme Court's most recent discussion of section 1823(e).

tamination existed on the property. This warranty or non-disclosure is the basis for Plaintiff's fraud and negligent misrepresentation claims. Plaintiff's non-disclosure claim is therefore the equivalent of an "agreement" for purposes of section 1823(e).

### 5. Identification of a Specific Asset Under Section 1823(e)

■ Plaintiff's alleged non-disclosure or warranty claim also falls within the purview of section 1823(e) because the fraud and negligent misrepresentation claims would tend to diminish the RTC's interest in a particular asset, i.e. the Lease. Section 1823(e) acts only to bar claims which affect the banking authorities' interest in specific, identifiable assets. *See e.g. RTC v. Midwest Fed. Sav. Bank,* 4 F.3d 1490 (9th Cir.1993). The Lease in this action constitutes such an identifiable asset. Plaintiff, if successful, would seek to reduce rent payments or possibly rescind the Lease altogether. The RTC's interest in the Lease would therefore tend to be diminished or defeated if the lawsuit is successful. Because Plaintiff's claims are based on an alleged warranty of no contamination, and there is a possibility of diminishing the RTC's interest in a specific asset, the Court finds that section 1823(e) applies to Plaintiff's non-disclosure claim.[11]

### 6. Columbia's Alleged Non–Disclosure or Warranty Does Not Meet the Requirements of Section 1823(e)

■ Plaintiff's claim of an alleged warranty does not meet the requirements of Section 1823(e). Two of the requirements outlined under Section 1823(e) are that an "agreement" must be in writing and approved by the board of directors or loan committee of the depository institution. *See* §§ 1823(e)(1) and (3). Plaintiff has failed to produce any evidence that the alleged warranty of no contamination is contained in a "writing" as required by section 1823(e)(1). Although the Lease itself is a writing which is recorded in Columbia's records, it does not include a warranty of no contamination. The only provision dealing with environmental contamination in the Lease places an affirmative duty on Plaintiff to notify Columbia of any discharges created by Plaintiff. Nor is there any evidence that Columbia's board of directors or loan committee approved any warranty or other representation on the part of Columbia to Plaintiff that no subsurface contamination existed on the property. (Serdenia Decl. at ¶¶ 4–8) Rather, Defendant has produced evidence that Columbia's records pertaining to the Lease discuss neither the presence nor absence of subsurface contamination at the 9601–9609 Santa Monica Boulevard property. (*Id.*) Thus, the alleged

---

11. Plaintiff's reliance on *Cote d'Azur* is misplaced. Although the *Cote d'Azur* court, in dicta, adopted the Fifth Circuit's reasoning that *D'Oench* and section 1823(e) do not apply to non-banking transactions, that case is distinguishable from the instant matter in two respects. First, the plaintiff there relied on a written agreement, thus fulfilling the *D'Oench* requirement of a clear and explicit written agreement. Second, section 1823(e) did not apply to the facts of *Cote d'Azur* because the agreement upon which plaintiff relied did not tend to diminish any "particular" asset of the failed institution.

Thus, although the court noted the absence of a lending relationship, its actual holding that section 1823(e) did not apply relied in part on the fact that no particular asset was diminished. The *Cote d'Azur* court also stated that the cases which have disregarded the lending relationship limitation on the application of the *D'Oench* doctrine have been decided under section 1823(e), not *D'Oench*. *Cote d'Azur,* 846 F.Supp. at 841.

In addition, unlike the Ninth Circuit, the Fifth Circuit has interpreted the *D'Oench* doctrine and

section 1823(e) to be interchangeable. The two Fifth Circuit decisions relied upon by the *Cote d'Azur* court are also distinguishable from the instant case. In *Thigpen v. Sparks,* 983 F.2d 644 (5th Cir.1993), the Fifth Circuit held that a breach of warranty claim by a purchaser of a trust company from a bank was not barred by section 1823(e) because the gist of the dispute did not involve a conventional banking transaction. However, the *Thigpen* court also pointed out that section 1823(e) was inapplicable because the FDIC had not acquired an asset which would tend to be diminished as required under the statute. Thus, *Thigpen* is distinguishable because in this case there is a particular asset which would be diminished by Plaintiff's claim.

Similarly, *Alexandria Assocs. v. Mitchell Co.,* 2 F.3d 598 (5th Cir.1993), the second case cited in *Cote d'Azur,* addressed only the limits of the *D'Oench* doctrine in its holding that the doctrine did not apply to non-banking transactions. The *Alexandria* court did not address whether section 1823(e) applied to the non-banking transaction at issue.

warranty of non-disclosure relied on by Plaintiff fails to meet the requirements of subsections (1) and (3) of section 1823(e).

Because Plaintiff's claims of fraud and negligent misrepresentation rest entirely upon an alleged warranty which is not reflected in any of Columbia's records, these claims are barred by section 1823(e). Plaintiff's declaratory relief claim seeks a judicial determination as to whether Plaintiff can legally rescind the Lease because it was fraudulently entered into due to Columbia's alleged non-disclosures. (Complaint at p. 8). Thus, the declaratory relief claim is derivative of the fraud and negligent misrepresentation claims. Because Plaintiff is unable to assert its fraud and negligent misrepresentation claims, its declaratory relief claim must also fail.

### B. Defendant's Counter-Claim for Breach of Contract

Defendant claims it is entitled to summary judgment on its counterclaim for breach of contract because Plaintiff has breached the Lease by failing to submit the appropriate rent payments. Under the original terms of the Lease, Plaintiff is to pay $14,532.00 per month, subject to yearly increases and other costs. (*See* Lease, Ex. 1 attached to Serdenia Decl.) During 1993 and 1994, the base monthly rent under the Lease was $17,551. (Sundelius Decl. at ¶ 3) Defendants have produced evidence, and Plaintiff does not dispute, that beginning in November 1993, Plaintiff began tendering rent payments in an amount much less than its monthly rental obligation under the Lease. (*Id.* at ¶¶ 5–7). Plaintiff does not contend nor has it produced any evidence that it has made the required rent payments. Thus, it is undisputed that Plaintiff has failed to meet its rental obligations under the Lease.

The Lease expressly states that a default occurs when Plaintiff, as tenant, "fails to make any payment of rent or other payments due under the Lease when the same is due." (Lease, at p. 35, ¶ 24.1, Exh. 1 attached to Serdenia Decl.). The evidence reveals that Plaintiff has failed to meet its express obligations under the Lease. Therefore, the Court finds that Plaintiff has breached the Lease, and that Defendant is entitled to re-cover past rent and other incidental payments outlined in the Lease for default, including late charges, "default rent" and the "security deposit."

For all the reasons stated above, Defendant's motion for summary judgment is GRANTED as to Plaintiff's fraud, negligent misrepresentation and declaratory relief claims. Summary judgment is also GRANTED as to Defendant's counter claim for breach of contract.

**SO ORDERED.**